Judge McMahon

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

09 CIV 9175



|  |  |
|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO; THOMAS OAKLEY, PAUL DUNN, AILEEN CORNIELLE, LUCIANO ABBATIELLO, STEVE ACIERNO, RON ADDEO, THOMAS BARRY, CHARLES BRADY, JOSEPH CARBALLO, LAUREN COLCLOUGH, MIKE DOWD, JULIET FOUNTAIN, GAVIN FRATER, NILSA GREENE, ADRIANE GRZYBOWSKI, ELAINE HENDERSON, GEORGE HOLMAN, KEVIN KAER, JEFFREY LEROY, DENISE LOPEZ, MARY MARTINI, CHRISTOPHER MCCARTHY, DENNIS MCGEE, DEBBIE MONROE, LAURA NUSS, RAY PEAY, MICHELLE PROCK, PAM REINHEIMER, DAISY RIVERA, ANTHONY SICURANZO, MARCHELLE SMITH, CHARLES SPINALE, TAMMI TERRELL, JAMES TREADWAY, MINDY VEGA, LORRIS WATSON, JUDITH WHIGHAM, ADRAINE WHITNEY, | COMPLAINT<br><br>JURY TRIAL DEMANDED |
| Plaintiffs, | |
| v. | |
| VERIZON COMMUNICATIONS, INC., | |
| Defendant. | |

## SUMMARY OF THE ACTION

1.      This is a class action brought pursuant to the Family Medical Leave Act of 1993, 29 U.S.C. §2601, et seq.  ("FMLA") to correct various and willful employment practices, policies and procedures implemented by Verizon Communications, Inc. ("Defendant") that interfere with employees' use of FMLA leave and retaliate against employees for use of that leave in violation of both the spirit and letter of the FMLA.

2.      Defendant interferes with its employees' FMLA rights through its policies, practices and procedures which, among other things, deny eligible employees FMLA leave for qualifying absences, delay FMLA leave approval and/or administrative review of FMLA certification information submitted by eligible employees and restrain and/or restrict employees from using FMLA leave to cover absences which are subsequent and related to absences for qualifying conditions for which Defendant already approved FMLA leave or which are at that time under review for FMLA coverage.

3.      Defendant follows a policy, practice and procedure which retaliates against employees who use FMLA leave, by extending the duration of sanctions imposed on employees before FMLA-protected absences took place.

4.      Defendant revised its Absence Control Plan ("ACP") to increase the level of sanction for chargeable absences in retaliation for employees' use of FMLA leave time.

5.      As a result of Defendant's FMLA policies, procedures and practices, employees have been fired, suspended, sanctioned and retaliated against when seeking to exercise or exercising their FMLA rights.  Eligible employees have been denied FMLA leave in violation of the law.

6.      The FMLA prohibits employers from interfering with, restraining, or denying qualified employees FMLA leave. Employers covered by the FMLA are required to grant leave to eligible employees.

7.     Named Plaintiffs are employees and former employees affected by Defendant's illegal policies, procedures, and practices, who seek to represent a Rule 23(b)(2) class.

8.     Named Plaintiffs seek appropriate class-wide injunctive and declaratory relief, as well as monetary damages, for the harm caused to them and members of the class by Defendant's willful interference with eligible employee attempts to exercise rights under the FMLA and for retaliation against employees' use of FMLA leave.

9.     This action is also brought pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. §185 to correct Defendant's actions in negation of the negotiated grievance procedure between Defendant and the Communications Workers of America, AFL-CIO.

## JURISDICTION

10.    This court has jurisdiction over this action pursuant to 28 U.S.C §1331, 29 U.S.C. §185(a) and 29 U.S. C. §2617 (a).  Plaintiffs' request for declaratory relief is authorized by 28 U.S.C. §§2201 and 2202, and by Rule 57 of the Federal Rules of Civil Procedure.

## VENUE

11.    The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Southern District of New York.  Venue is appropriate in this District because it is the judicial district where Defendant resides, is authorized to conduct and is conducting business.

## PARTIES

12.     Plaintiff Communications Workers of America, AFL-CIO ("CWA"), is a labor organization as defined in §2(5) of the LMRA, 29 U.S.C. §152(5) and within the meaning of §301 of the LMRA, 29 U.S.C. §185.  CWA is and has been at all relevant times party to collective bargaining agreements with Defendant.  CWA is and has been at all relevant times headquartered in Washington, DC.

13.     Plaintiff CWA represents at least  36,000 of Defendant's employees spread out over various bargaining units, each of which is covered by a collective bargaining agreement containing a negotiated grievance procedure.  CWA is the parent body of Local Union affiliates in multiple states which administer the collective bargaining agreements and handle employee representation issues on a day-to-day basis.

14.     Plaintiff Luciano Abbatiello is and has been at all relevant times an employee of Defendant.  Plaintiff Abbatiello holds the position of Splicer.  He resides in Westbury, New York.  Plaintiff Abbatiello is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

15.     Plaintiff Steve Acierno is and has been at all relevant times an employee of Defendant.  Plaintiff Acierno holds the position of Central Office Technician.  Plaintiff Acierno resides in Bayport, New York.  Plaintiff Acierno is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

16.     Plaintiff Ron Addeo is and has been at all relevant times an employee of Defendant. Plaintiff Addeo holds the position of Field Technician.  He resides in

4

Brooklyn, New York.  Plaintiff Addeo is an eligible "employee" under the FMLA, 29

U.S.C. §2601(2).

17.     Plaintiff Thomas Barry is and has been at all relevant times an employee

of Defendant.  Plaintiff Barry holds the position of Cable Splicer.  Plaintiff Barry resides

in Poquoson, Virginia.  Plaintiff Barry is an eligible "employee" under the FMLA, 29

U.S.C. §2601(2).

18.     Plaintiff Charles Brady is and has been at all relevant times an employee

of Defendant.  Plaintiff Brady holds the position of S.E.T.  Plaintiff Brady resides in

Upper Darby, Pennsylvania.  Plaintiff Brady is an eligible "employee" under the FMLA,

29 U.S.C. §2601(2).

19.     Plaintiff Joseph Carballo is and has been at all relevant times an

employee of Defendant.  Plaintiff Carballo holds the position of Service Technician.  He

resides in Westbury, New York.  Plaintiff Carballo is an eligible "employee" under the

FMLA, 29 U.S.C. §2601(2).

20.     Plaintiff Lauren Colclough was an employee of Defendant at all relevant

times.  Plaintiff Colclough held the position of Service Representative until his

termination on February 21, 2007.  He resides in Baltimore, Maryland.  Plaintiff

Colclough was an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

21.     Plaintiff Aileen Cornielle is and has been at all relevant times an employee

of Defendant. Plaintiff Cornielle holds the position of Consultant.  She resides in Jersey

City, New Jersey.  Plaintiff Cornielle is an eligible "employee" under the FMLA, 29

U.S.C. §2601(2).

22.     Plaintiff Mike Dowd is and has been at all relevant times an employee of Defendant. Plaintiff Dowd holds the position of Service Technician.  He resides in Brooklyn, New York.  Plaintiff Dowd is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

23.     Plaintiff Paul Dunn was at all relevant times an employee of Defendant. Plaintiff Dunn held the position of Consultant.  Plaintiff Dunn resides in Edison, New Jersey.  Plaintiff Dunn was an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

24.     Plaintiff Juliet Fountain was at all relevant times an employee of Defendant.  Prior to leaving her employment with Defendant, Plaintiff Fountain held the position of Consultant.  She resides in Salisbury, Maryland.  Plaintiff Fountain is an eligible "employee" under the FMLA, 29 U.S. C. §2601(2).

25.     Plaintiff Gavin Frater was an employee of Defendant at all relevant times. Plaintiff Frater held the position of a Sales and Service Specialist until his termination. He resides in New York, New York.  Plaintiff Frater is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

26.     Plaintiff Nilsa Greene is and has been at all relevant times an employee of Defendant.  She holds the position of General Clerk.  Plaintiff Greene resides in Vineland, New Jersey.  Plaintiff Greene is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

27.     Plaintiff Adriane Grzybowski is and has been at all relevant times an employee of Defendant.  Plaintiff Grzybowski holds the position of Sales Associate. She resides in Mayfield, Pennsylvania.  Plaintiff Grzybowski is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

28.     Plaintiff Elaine Henderson is and has been at all relevant times an employee of Defendant.  Plaintiff Henderson holds the position of Consultant.  Plaintiff Henderson resides in Lindenwold, New Jersey.  Plaintiff Henderson is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

29.     Plaintiff George Holman was at all relevant times an employee of Defendant. Plaintiff Holman held the position of Splicer until he was terminated. Plaintiff Holman resides in Newark, Delaware.  Plaintiff Holman is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

30.     Plaintiff Kevin Kaer is and has been at all relevant times an employee of Defendant.  Plaintiff Kaer holds the position of TTA.  Plaintiff Kaer resides in Oceanside, New York.  Plaintiff Kaer is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

31.     Plaintiff Jeffrey Leroy is and has been at all relevant times an employee of Defendant.  Plaintiff Leroy holds the position of Technician.  Plaintiff Leroy resides in Brooklyn, New York.  Plaintiff Leroy is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

32.     Plaintiff Denise Lopez is and has been at all relevant times an employee of Defendant.  Plaintiff Lopez holds the position of Customer Service Representative. She resides in Lancaster, Pennsylvania.  Ms. Lopez is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

33.     Plaintiff Mary Martini is and has been at all relevant times an employee of Defendant. Plaintiff Martini holds the position of Maintenance Administrator.  She resides in Conshohocken, Pennsylvania.  Ms. Martini is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

34.     Plaintiff Christopher McCarthy is and has been at all relevant times an employee of Defendant.  Plaintiff McCarthy holds the position of Service Technician. He resides in Delran, New Jersey.  Plaintiff McCarthy is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

35.     Plaintiff Dennis McGee is and has been at all relevant times an employee of Defendant. Plaintiff McGee holds the position of Field Technician.  Plaintiff McGee resides in Coram, New York.  Plaintiff McGee is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

36.     Plaintiff Debbie Monroe was at all relevant times an employee of Defendant. Plaintiff Monroe held the position of Credit Specialist until she was terminated on June 27, 2008.  Plaintiff Monroe resides in Willingboro, New Jersey. Plaintiff Monroe was an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

37.     Plaintiff Laura Nuss is and has been at all relevant times an employee of Defendant.  Plaintiff Nuss is a Directory Assistance Operator and Administrative Assistant.  She resides in Pine City, New York.  Plaintiff Nuss is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

38.     Plaintiff Thomas Oakley is and has been at all relevant times an employee of Defendant.  He resides in Springville, New York.  Plaintiff Oakley holds the position of Field Technician.  Plaintiff Oakley is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

39.     Plaintiff Ray Peay is and has been at all relevant times an employee of Defendant.  Plaintiff Peay holds the position of Field Technician.  He resides in Bronx, New York.  Plaintiff Peay is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

40.    Plaintiff Michelle Prock was an employee of Defendant at all relevant times. Plaintiff Prock held the position of a Customer Service Associate until the time of her termination in April of 2007.  She resides in Round Lake, New York.  Plaintiff Prock was an eligible "employee" under the FMLA, 29 U.S. C. §2601(2).

41.    Plaintiff Pam Reinheimer is and has been at all relevant times an employee of Defendant. Plaintiff Reinheimer holds the position of Customer Service Representative.  Plaintiff Reinheimer resides in Upper St. Clair, Pennsylvania.  Plaintiff Reinheimer is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

42.    Plaintiff Daisy Rivera is and has been at all relevant times an employee of Defendant.  Plaintiff Rivera holds the position of Consultant.  Plaintiff Rivera resides in Delaware Water Gap, Pennsylvania.  Plaintiff Rivera is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

43.    Plaintiff Anthony Sicuranzo is and has been at all relevant times an employee of Defendant. Plaintiff Sicuranzo holds the position of Field Technician.  He resides in White Plains, New York.  Plaintiff Sicuranzo is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

44.    Plaintiff Marchelle Smith is and has been at all relevant times an employee of Defendant.  Plaintiff Smith holds the position of Sales Consultant.  Plaintiff Smith resides in Berlin, Maryland.  Plaintiff Smith is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

45.    Plaintiff Charles Spinale was at all relevant times an employee of Defendant. Plaintiff Spinale held the position of Outside Field Technician when he was

terminated on September 26, 2008.  Plaintiff Spinale resides in Holbrook, New York.

Plaintiff Spinale was an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

46.     Plaintiff Tammi Terrell is and has been at all relevant times an employee

of Defendant.  Plaintiff Terrell holds the position of Customer Service Representative.

Plaintiff Terrell resides in Albany, New York.  Plaintiff Terrell is an eligible "employee"

under the FMLA, 29 U.S.C. §2601(2).

47.     Plaintiff James Treadway was at all relevant times an employee of

Defendant. Plaintiff Treadway held the position of Consultant.  Plaintiff Treadway

resides in South Charleston, West Virginia.  Plaintiff Treadway was an eligible

"employee" under the FMLA, 29 U.S.C. §2601(2).

48.     Plaintiff Mindy Vega is and has been at all relevant times an employee of

Defendant. Plaintiff Vega holds the position of Consultant.  Plaintiff Vega resides in

North Bergen, New Jersey.  Plaintiff Vega is an eligible "employee" under the FMLA, 29

U.S.C. §2601(2).

49.     Plaintiff Lorris Watson is and has been at all relevant times an employee

of Defendant. Plaintiff Watson holds the position of Cable Splicing Technician.  Plaintiff

Watson resides in Riverdale, Maryland.  Plaintiff Watson is an eligible "employee" under

the FMLA, 29 U.S.C. §2601(2).

50.     Plaintiff Judith Whigham is and has been at all relevant times an employee

of Defendant.  Plaintiff Whigham holds the position of Consultant.  Plaintiff Whigham

resides in East Brunswick, New Jersey.  Plaintiff Whigham is an eligible "employee"

under the FMLA, 29 U.S.C. §2601(2).

51.     Plaintiff Adraine Whitney is and has been at all relevant times an employee of Defendant. Plaintiff Whitney holds the position of Customer Service Administrator.  She resides in Clifton Park, New York.  Ms. Whitney is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

52.     Defendant  is a telecommunications business engaged in interstate commerce incorporated in the State of Delaware with its principal executive offices located in New York, New York.  At all relevant times, Defendant continuously had at least fifty employees employed within 75 miles of each other for at least 20 calendar workweeks.  Defendant is an "employer" under the FMLA, 29 U.S.C. §2601(4).  Defendant is also an employer as defined in §2(2) of the LMRA, 29 U.S.C. §152(2) and within the meaning of §301 of the LMRA, 29 U.S.C. §185.

53.     Defendant does business through various subsidiaries, including  principal subsidiaries which are named Verizon Delaware, Inc., Verizon Maryland, Inc., Verizon New England, Inc., Verizon New Jersey, Inc., Verizon New York, Inc., Verizon Pennsylvania, Inc., Verizon Virginia, Inc., Verizon Washington, DC Inc., and Verizon West Virginia, Inc.

## CLASS ALLEGATIONS

54.     This action is brought by the Named Plaintiffs  as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The class represented by the Named Plaintiffs, consists of all current and former non-managerial employees of Defendant who, within three years preceding the filing of this Complaint, were eligible for FMLA leave and had their rights under the FMLA violated by Defendant's adoption of

the unlawful policies, practices and procedures, as set forth more particularly below, which have class-wide application and effect.

55. The exact size of the class is not presently known and can only truly be determined through discovery on that point. Plaintiffs believe, however, that the class is made up of thousands of current and former employees of Defendant throughout a wide-ranging geographic area. The policies, practices and procedures challenged in this Complaint have been applied and continue to be applied to Defendant's employees in the States of Delaware, New York, New Jersey, Pennsylvania, Maryland, Virginia, Washington, D.C., West Virginia, and states in New England. Given the vastness of this class the joinder of individual members would be impractical.

56. The questions of law and fact integral to a determination of whether Defendant's policies, practices and procedures have negatively impacted Defendant's employees are common to the members of the class.

57. The claims asserted are typical of those of the members of the class.

58. The Named Plaintiffs have a substantial interest in the outcome of this litigation insofar as their rights and the rights of Defendant's other non-management employees are being violated under the FMLA.

59. The Named Plaintiffs will fairly and adequately protect the interests of the class.

60. Prosecution of separate actions by individual class members challenging Defendant's policies, practices and procedures that have class wide implication and effect would create the risk of inconsistent or varying adjudications with respect to

individual class members which would establish incompatible standards of conduct for the Defendant.

61.    Prosecution of separate actions would create the risk that adjudications of individual complaints would be dispositive of the interests of members of the class who are not parties to those individual actions.  Individual actions would substantially impair or impede the ability of nonparties to protect their interests.

62.    In adopting and implementing the policies, practices and procedures alleged herein, Defendant has acted or refused to act on grounds that are generally applicable to the class, thereby making appropriate final injunctive and/or declaratory relief with respect to the class as a whole.

63.    The class action is superior to other available methods for fairly and efficiently adjudicating the controversy concerning whether Defendant's policies, practices and procedures that have class-wide impact and effect are in violation of the FMLA.

## THE FAMILY MEDICAL LEAVE ACT

64.    The purpose of the FMLA statute is to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families and to promote national interests in preserving family integrity, and to entitle employees to take reasonable leave for medical reasons including time to care for children, spouses and parents.

65.    The United States Department of Labor ("DOL") has issued implementing regulations intended to interpret and enforce compliance with the requirements of the FMLA ("FMLA Regulations").

66.     The FMLA Regulations were revised in January 2009.  Most of the issues presented here occurred before the FMLA Regulations were amended. When it is necessary to distinguish the FMLA Regulations, the present regulations will be referred to as the "current" regulations, and the pre-January 2009 regulations will be referred to as the "old" regulations.  The intent of the FMLA is the same under both sets of regulations with regard to the obligations of a covered employer to covered employees.

67.     Defendant's policies, practices and procedures which interfere with employees' use of FMLA leave and which retaliate against employees' use of approved FMLA leave, as complained of here, are in violation of the FMLA under both the "old" and the "current" regulations.

68.     Employers covered by the FMLA must grant up to 12 weeks of job-protected unpaid leave during any 12 month period to eligible, covered employees for the following reasons: 1)  the birth and care of the eligible employee's child, or placement of a child with the employee for adoption or foster care; 2) the care of an immediate family member  who has a serious health condition; or 3)  the care of the employee's own serious health condition.

69.     Defendant is an "employer" covered by the FMLA, because it is engaged in an industry or activity affecting commerce, and it employs 50 or more employees for each working day during each of 20 or more calendar work weeks in a year. Defendant's designation as a covered employer under the FMLA includes any person who acts directly or indirectly in the interest of the Defendant.

70.     An "eligible employee" is one who has been employed by the Defendant for at least 12  months and who has worked at least 1250 hours during the 12 -month

period immediately proceeding the commencement of the leave, and is employed at a worksite where 50 or more employees are employed  by Defendant within 75 miles of that worksite.

71.    A "serious health condition" entitling employees to FMLA leave is defined as an illness, injury, impairment, or physical or mental condition that involves inpatient care and/or the continuing treatment by a health care provider.

72.    A "heath care provider" ("HCP") includes any doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices or any of the other categories of persons the United States Secretary of Labor determines is capable of providing health care services.

73.    The regulations mandate that an employee must provide the employer notice of the need to take FMLA leave thirty days in advance of the date  the leave is to begin, if practicable.  Thus, the regulations require an employee to seek pre-certification for foreseeable future absences that may qualify for FMLA leave coverage.

74.    The FMLA gives an employer the right to require an employee seeking FMLA leave to submit a medical certification in support of his/her FMLA leave request, whether leave is sought before or after an absence.

75.    The FMLA places obligations on an employer where the employer considers an employee's submitted certification to be incomplete.  The old regulations required that the employee be informed of the problem and be given a reasonable time within which to submit a corrected certification.  The current regulations require the employer to notify the employee of the deficiency and inform the employee in writing as

to what additional information is necessary to make the certification complete and sufficient.

76.    Under the current regulations, an employer must provide an employee with the opportunity to cure the deficiency by submitting an amended certification within seven (7) days, unless seven calendar days is not practicable.  Only after the seven (7) day period for curing the specified deficiencies has passed, may the employer deny FMLA coverage on the grounds a certification is incomplete.

77.    The DOL's regulations provide an employer with the right, under certain circumstances, to contact an employee's HCP when a certification is unclear or ambiguous or to require an employee to obtain a second opinion at the employer's expense.

78.    Under the DOL's '30 day rule,' an employer must limit its requests for FMLA recertification.  An employer may generally request review only once every 30 days and only in connection with an actual absence.  If a certification is for 30 days, an employer must wait longer than 30 days to request the employee recertify.

79.    In all cases the employer can request recertification every six months, even when a certification exceeds 6 months.  An employer can request recertification before 30 days under very limited circumstances.  The employer can request "early" recertification if an employee requests an extension of approved FMLA leave or if the circumstances of the original certification have changed significantly.

## BACKGROUND FACTS COMMON TO ALL CLAIMS

### Defendant's Absence Control Plan

80.     Defendant has an attendance policy, the Absence Control Plan ("ACP"),
which has covered Defendant's employees at various times since 1964.  The Named
Plaintiffs are all either currently covered by some version of Defendant's ACP, were
covered by some version of the ACP prior to Defendant terminating their employment,
or were covered by some version of the ACP prior to leaving their employment. There is
a Mid-Atlantic ACP version (employees in Delaware, Maryland, New Jersey,
Pennsylvania, Virginia, Washington, DC and West Virginia, a New England ACP version
and a New York ACP version.

81.     Defendant's ACP has some regional variations.  For example, the plan
covering Defendant's Mid-Atlantic region includes tardiness and absence provisions.
Verizon New York has a separate tardiness control plan to address employee lateness.

82.     Defendant's ACPs affect the Named Plaintiffs and the proposed class
members  because they establish the rules and regulations for imposing discipline
against employees for being absent.

83.     Defendant's  ACP is designed to encourage employees to avoid missing
work.  The ACP instructs employees to maintain a reasonable level of health, to take
precautions against illness and to live and work safely so that employees will not need
to miss work.

84.     In the ACP, "good attendance" is repeatedly mentioned as an essential job requirement. The ACP explains that employee absence impedes Defendant's ability to remain competitive and to provide the service Defendant's customers require.

85.     The ACP penalizes employees for absenteeism so they will minimize time off work. Employee absences result in progressive discipline, called "steps", which may be paired with suspension without pay or termination.

86.     Depending on an employee's length of service, location or when Defendant's improper conduct occurred, the ACP consists of four, five, or six steps.

87.     When an employee incurs a "chargeable absence" under the ACP, Defendant places him/her on a step.  At the time an employee is stepped, a date is set on which an employee will come off of that step.  Reverting to a lower step under the ACP is known as "retrogression."   If the employee does not incur any chargeable absences before the retrogression date, the employee will be removed from the step.

88.     The ACP's sanctions and penalties only apply to "chargeable absences." Because FMLA-covered absences are protected by law, they cannot be treated as chargeable.

89.     Under the policies, practices and procedures which are the subject of this Complaint, FMLA-eligible employees are often improperly denied FMLA coverage.  An absence becomes chargeable when the employer denies it FMLA coverage. Chargeable absences result in the employer imposing discipline against the employee under the ACP.

90.     Defendant's policy, practice and procedure is to extend the step's retrogression date for employees who take approved FMLA leave.

**Defendant's FMLA Certification Process and Procedures**

91.    Defendant uses an internal department, the Absence Reporting Center ("ARC"), to respond to and process employee requests for medical leaves of absence under the FMLA.  ARC is responsible for processing FMLA leave requests made by Verizon employees.  This responsibility applies whether the leave sought is continuous in nature or intermittent leave that is needed for a chronic condition.

92.    At all times relevant to this case, Defendant has authorized and ratified all unlawful policies, procedures and practices undertaken by ARC personnel against employees who sought to exercise or exercised their FMLA rights as described in this Complaint.

93.    Defendant requires all employees who are absent to report the absence to their supervisor for reporting to ARC.  The supervisor enters the dates of the absence into Defendant's Absence Management Tracking System ("AMTS").

94.    An employee calling in absent is required to inform his/her supervisor whether the absence is "new" or  "subsequent and related" to a previously reported absence involving the same serious health condition which may or may not already have been approved for FMLA leave.

95.    For every absence, ARC makes a preliminary determination as to whether the employee is eligible for FMLA leave, i.e., whether the employee has 12 months of service with the Defendant, has worked 1250 hours and has available FMLA leave.

96.     Defendant informs employees who have been absent that if they wish to obtain FMLA leave time they must submit a certification and  that an unapproved absence will be classified as chargeable.

97.     ARC issues a preliminary determination letter to the employee for every absence, informing the employee whether or not s/he is eligible for FMLA leave coverage.

98.     If the employee wishes to have an absence approved for FMLA coverage, the employee must submit an FMLA certification to ARC.  An employee has 25 days from the date of absence to file an FMLA certification form with ARC.

99.     An FMLA certification form must be filled out by an employee's healthcare provider ("HCP") or the family member's HCP to support his or her application for FMLA leave.  The HCP indicates the date on which the serious health condition began, its probable duration, appropriate medical facts related to the condition, the dates of future treatment and, if necessary, a statement of the need for intermittent leave.

100.    In the past when an employee was eligible for FMLA leave, Defendant would include a certification form with its preliminary determination letter to the employee.  The form would be dated with the first day absent ("FDA") recorded in the AMTS.

101.    It is now Defendant's practice to mail the preliminary approval letter without including a certification form.

102.    Employees are now instructed to download an FMLA certification form from the company website, or to obtain one from a supervisor.  As a result, employees are responsible for entering the FDA on the certification form themselves.

103.   When an employee submits a certification form before the end of the 25 day period runs out, and ARC concludes the certification form is incomplete, the employee is sometimes given notice and allowed the balance of the 25 days to correct and re-submit the form.

104.   Under no circumstances is an employee ever given more than 25 days to submit the initial certification form.

105.   Defendant provides an opportunity for the employee to appeal a denial of FMLA leave through a process Defendant calls "administrative review."  Regardless of the reason for the denial employees are given 14 days to request administrative review and to submit an amended certification form to correct any alleged deficiencies.

106.   Defendant commonly states that a certification was denied on the grounds it was vague, incomplete, complete but insufficient to show that the leave qualifies under the FMLA guidelines or, was untimely filed.

107.   Defendant seldom provides information setting forth what different or additional information is needed to make a certification complete and sufficient.

108.   In the case of an incomplete certification, Defendant indicates only which sections are not complete, but Defendant does not provide information indicating what is wrong with an ostensibly complete form.

109.   It is Defendant's regular policy, practice and procedure to provide little information to employees about what is needed to cure a certification.  The information provided to employees requesting certification is scripted.  Additional information is given only if an employee specifically asks about an issue.

110.    When a certification is denied and /or denied administrative review, FMLA leave/coverage is denied.  The absence then becomes "chargeable."  If an absence is chargeable, the employee is "stepped" under the ACP.  Chargeable absences may result in the imposition of discipline against the employee under the ACP.

111.    When an FMLA certification is approved, the employee's absence receives FMLA protection.  "Nonchargeable" time off is not subject to discipline under the ACP.  Employees who are approved for intermittent FMLA leave related to the same condition are granted "nonchargeable" intermittent leave time.

### Defendant Refuses to Pre-certify Foreseeable Absences as Required by the Statute.

112.    Defendant refuses to allow employees to pre-certify foreseeable absences.  When employees submit FMLA certifications in advance of a foreseeable absence, Defendant denies FMLA certification because the date on the certification does not match an absence recorded in the AMTS.

113.    When Defendant refuses to pre-certify absences and engages in the tactics outlined below employees are unable to get approval for ongoing conditions that qualify for FMLA coverage despite their eligibility for such coverage.

114.    Defendant's  refusal to pre-certify FMLA leave  results in disciplinary sanctions against employees including progression through steps of the ACP, suspensions and termination.  The Defendant's policy and practice of refusing to pre-certify directly clashes with obligations the FMLA expressly places upon employees seeking FMLA leave.

**Valid FMLA Certifications Are Denied When They Are Submitted
Late Due to No Fault of the Employee.**

115.   ARC systematically rejects certifications and amended certifications that are late through no fault of the employee.

116.   ARC denies otherwise valid FMLA leave requests as untimely even where an employee's HCP attests that the HCP is responsible for the submission of the certification outside of the 25-day or 14-day period, as applicable.

117.   ARC denies  valid FMLA leave requests as untimely when ARC loses certification forms  or does not receive them even where employees provide proof of timely mailing or faxing by employees and/or their HCPs.

118.   Defendant willfully violates the FMLA by adhering to policies, practices and procedures   by which Defendant refuses to review certification forms received outside of the relevant time period through no fault of the employee.

119.   The application of these policies, practices and procedures results in disciplinary sanctions against employees including progression through steps of the ACP, suspensions and termination.

**Defendant Refuses to  Review Valid FMLA Certifications
Or Grant FMLA Leave When Supervisors Fail
to Accurately Record Employee Absences.**

120.   Often employees report an absence as "subsequent and related" to a previously FMLA-approved absence but their supervisors incorrectly enter the subsequent and related absence as "new" in the AMTS.

121.   This misreporting of subsequent and related absences may result in the denial of FMLA coverage to employees on the grounds of ineligibility even though the employees have approved certifications on file.  Additionally, denial of FMLA coverage

may also occur because the employee does not know a new certification is required by Defendant for the "subsequent and related" absence, because the original absence already was covered and approved for intermittent leave.

122.    Employees are prohibited from unilaterally informing ARC about absence reporting errors and must rely on their supervisors to make the correction in the AMTS. Upon information and belief, supervisors are often reluctant to change the status of absences previously entered into the AMTS, leaving employees with little or no recourse when an absence is intentionally or negligently recorded incorrectly.

123.    When certifications for FMLA leave are denied because there is no corresponding absence in the AMTS, employee absences become chargeable.

124.    This failure to accurately report absences for FMLA purposes results in disciplinary sanctions against employees including progression through steps of the ACP, suspensions and termination.

### Valid FMLA Certifications Are Regularly Delayed And Denied Because of Defendant's Handling of  Physician Review.

125.    Defendant routinely abuses the power of physician review by delaying review of certifications which it deems to be unclear or ambiguous.

126.    Defendant routinely fails to contact HCP's to resolve  simple problems with submitted certifications, such as  clarifying  or authenticating  whether an HCP or his agent failed to initial changes to the certification form or (in the case of the agent) to identify their relationship to the HCP when s/he  made changes to a certification.

127.    Defendant also regularly delays physician review of certifications which include intermittent leave time Defendant finds objectionable.  Defendant regularly

delays certifications by doing physician review and, then, rarely, if ever, exercises its option to seek a second opinion.

128.    Defendant's abuse of the physician review process results in disciplinary sanctions against employees including progression through steps of the ACP, suspensions and termination.

### Defendant Regularly Delays Review and Approval of Valid FMLA Certifications Causing Denial of FMLA Certification And Intermittent Leave Time.

129.    The FMLA charges employers with the responsibility of providing prompt determinations on FMLA leave certifications.

130.    Nevertheless, Defendant routinely takes several weeks and, sometimes, even months to make FMLA determinations.

131.    Defendant requires employees to submit a separate FMLA certification form for each absence until a certification for intermittent leave has been granted. Employees who fail to submit new certifications, because they have an absence they believe is covered under a previously-submitted certification for a prior absence due to the same condition, are automatically denied FMLA coverage.  Defendant also later denies the administrative review on the grounds of  failure to submit an initial certification.

132.    Defendant's systematic delay of the processing of FMLA certifications interferes with employees' use of FMLA leave and taxes them with chargeable absences that should be approved as part of an intermittent leave plan related to a valid FMLA certification.

133.    Defendant's persistent delays in reviewing and approving of employees' FMLA certifications results in disciplinary sanctions against employees including progression through steps of the ACP, suspensions and termination.

## Defendant Fails to Provide Correct and Complete Information to Employees Regarding Rejected Certifications.

134.    Defendant regularly provides incomplete and incorrect information to employees about how to cure disapproved certifications for submission to administrative review.

135.    Defendant's initial denial letter states that administrative review may be granted where the employee provides supporting documentation indicating that the untimely submission of certification  was not the fault of the employee.

136.    Defendant's denial letter is misleading.  Under Defendant's regular practice, only a note from an employee's HCP attesting that untimeliness was  the HCP's fault  will result in the overturning of a denial of FMLA for untimeliness. Defendant routinely rejects documentation provided by the employee explaining the situation and the certification form is denied administrative review.

137.    ARC routinely tells employees by phone that its denial letter stated that certification forms which are untimely  due to a failure on the HCP's part require a note from the HCP. The ARC denial letter makes no such statement.

138.    It is ARC's practice to incorrectly tell employees that an oral request for administrative review is sufficient to secure review.   Defendant refuses, however, to administratively review certifications  unless the submission for review includes a signed writing specifically requesting administrative review.

139.   ARC only provides information based on the specific questions asked by an employee.  If the employee does not ask about an aspect of the certification form, ARC does not volunteer information about that aspect of the certification form.

140.   Defendant's  willful refusal to provide advice to  employees on how to remedy rejected certification submissions for administrative review results in disciplinary sanctions against employees including progression through steps of the ACP, suspensions and termination.

### Defendant Denies Valid, Timely Applications for Administrative Review Where the Submission Does Not Specifically Request "Administrative Review" or Include the Employee's Signature.

141.   An employee's submission of an amended certification form within Defendant's 14 day-time period for seeking administrative review puts Defendant on notice that an employee is requesting administrative review of the FMLA leave denial.

142.   Defendant consistently refuses to review valid amended certification forms when an employee does not include a signed writing specifically requesting "administrative review," even though it is obvious that the employee is appealing the decision

143.   Even when an employee writes the phrase "administrative review" on the paperwork, ARC still refuses to review amended certification forms if the employee does not also include his/her signature along with the request for "administrative review."

144.   Defendant's denial of administrative review where an employee does not use that specific phrase or include his/her signature where those words are used results in disciplinary sanctions against employees including progression through steps of the ACP, suspensions and termination.

**Defendant Rejects Valid FMLA Certifications When HCPs or Their
Agents Do Not Initial Amendments or the Agent Does Not
Identify His/Her Relationship to the HCP.**

145.   Defendant follows a policy, practice and procedure of denying administrative review to FMLA leave certifications if an amended certification form has not been initialed by the employee's HCP or the HCP's agent.

146.   Defendant also systematically denies administrative review of valid amended certifications if a HCP's agent makes the amendments, but does not state their relationship to the HCP, in writing.

147.   When Defendant disregards valid certifications for a presumed lack of authenticity, FMLA certification of valid absences is denied and the absences become chargeable.

148.   Defendant's denial of administrative review to valid FMLA leave certifications due to a lack of a HCP or HCP agent's initials or an agent's explanation of the agent's  relationship to the HCP, i.e. presuming inauthenticity, results in disciplinary sanctions against FMLA-eligible employees including progression through steps of the ACP, suspensions and/or termination.

**Defendant Makes Excessive Requests for Recertification.**

149.   Defendant adheres to a policy, practice and procedure of requesting recertification of absence time for serious health conditions that have been previously certified for FMLA coverage.  Defendant requires recertification more often than is allowed by the statute.

150.   Notwithstanding the FMLA's restrictions, Defendant regularly requires recertification of each and every absence where an employee exceeds the frequency or

the duration stated in the initial certification even in instances where the excess time is negligible and/or the circumstances of the certification have not changed significantly.

151.   Failure to submit recertification forms results in revocation of the previously approved FMLA leave, making formerly FMLA-protected absences chargeable under the ACP.

152.   Defendant's adherence to its policy, practice and procedure of requesting excessive recertification results in disciplinary sanctions against FMLA qualifying and eligible employees, including progression through steps of the ACP, suspensions and termination.

### Defendant Regularly Denies Valid FMLA Certifications Despite Disability Approval for the Same Absence and Condition.

153.   Defendant's stated custom has been to grant FMLA leave coverage to employees who have been granted disability leave within 39 days of applying for FMLA leave.

154.   MetLife administers Defendant's disability program, but is not involved in FMLA coverage determinations.

155.   Company policy indicates that if MetLife approves an employee's disability within 39 days of the date an absence is reported, FMLA coverage is automatically approved.  Likewise, the Company's stated custom is that where  disability coverage is extended within the established timeframes, so too is the FMLA coverage.

156.   Despite Defendant's stated custom, it is Defendant's practice to deny FMLA certification despite a grant of disability coverage by MetLife.

157.   Defendant's denial of FMLA coverage for valid absences despite the grant of disability coverage to these same absences makes them chargeable.

29

158.     Defendant's practice of not approving FMLA certification for time covered by disability leave results in disciplinary sanctions against FMLA qualifying and eligible employees including progression through steps of the ACP, suspensions and termination.

**Defendant Extends the Retrogression Date of Employees Who Use FMLA Leave, Thereby Penalizing Them for Taking Protected Leave.**

159.     When an employee is placed on a step under the ACP, Defendant sets a date on which the employee will revert back to a lower step under the ACP if the employee does not incur any additional chargeable absences before that date.

160.     The reversion to a lower step described in ¶ 87 is known as "retrogression."

161.     An employee's use of approved FMLA leave adversely affects a previously established retrogression date.

162.     Defendant's policy, practice and procedure is to extend the time of the employee's retrogression period by the amount of approved FMLA leave an employee uses moving the date forward.

163.     This extension of the retrogression date occurs whether the FMLA leave taken is continuous or intermittent.

164.     Defendant's extension of retrogression dates as a result of employees' use of approved FMLA leave results in disciplinary sanctions against FMLA qualifying and eligible employees including progression through steps of the ACP, suspensions and termination.

**Defendant's Revision To Its Absence Control Plan.**

165.    On November 5, 2006, Defendant put a revised version of the ACP into effect in New York in response to employees' use of FMLA leave time.  The revised ACP was subsequently put into effect in other Verizon locations and subsidiaries.

166.    The revised plan increased the severity of sanction under the ACP for chargeable absences.

167.    As a result of the ACP revisions, employees incurring chargeable absences progress through the ACP steps with their corresponding discipline quicker than had previously been the case.

168.    Defendant's revision of the ACP results in more severe and frequent sanctions, in a shorter period of time, including more rapid progression through steps of the ACP, suspensions and termination

## CLAIMS FOR RELIEF

### COUNT I

**(FMLA Class-Wide Claims for Declaratory and Injunctive Relief)**

169.    The Named Plaintiffs hereby incorporate Paragraphs 1 through 168 of this Complaint as if fully set forth herein.

170.    Defendant's policies, practices and procedures alleged in this Complaint have interfered with and denied the rights of the Named Plaintiffs and other employees in the class in violation of the FMLA.

171.   Defendant's policies, practices and procedures as alleged in this Complaint constitute retaliation against Named Plaintiffs and similarly situated employees in the class for exercising their rights under the FMLA.

172.   The Named Plaintiffs have all been personally subjected to one or more of Defendant's challenged policies, practices and procedures as set forth more specifically in Counts II, III and IV.

173.   The Named Plaintiffs and similarly situated employees in the class are entitled to declaratory judgment that the challenged policies, practices, procedures and actions adopted and applied by Defendant are unlawful and violate the FMLA.

174.   The Named Plaintiffs have not made previous application to this Court for the injunctive relief sought by the instant action.

175.   Unless injunctive relief is granted, Defendant's employees will continue to be irreparably harmed by Defendant's continued violations of the FMLA.

176.   No adequate or complete remedy at law is available to the Named Plaintiffs or other members of the class to redress the challenged violations of the FMLA.

## COUNT II

### (FMLA Interference)

177.   The Named Plaintiffs hereby incorporate the allegations contained in Paragraphs 1 through 168 of this Complaint as if they were fully set forth herein.

178.   Defendant has adopted and applied a number of policies, practices and procedures which willfully interfere with and deny employees' rights under the FMLA. As set forth more fully below, the Named Plaintiffs and members of the class have been

subjected to one or more of these policies, practices and procedures.  This interference has resulted in the imposition of sanctions in the form of placement on steps of the ACP, suspensions, and termination.

179.   Upon information and belief, Defendant's employees refrain from attempting to exercise or exercising their FMLA rights as a result of their knowledge of Defendant's FMLA policies, practices and procedures and the sanctions which result if FMLA leave is denied for an absence.

180.   Defendant's policies, practices and procedures detailed below constitute willful unlawful interference with employees' rights in violation of the Family and Medical Leave Act under 29 U.S.C. §2615(a)(1) and 29 C.F.R. §825.220(b).

**181.   Defendant's refusal to pre-certify employees' foreseeable absences constitutes unlawful interference with employees' rights under the FMLA. Defendant has subjected Plaintiff Nuss and members of the class to this violation of the law**.

182.   Plaintiff Nuss was absent from work on March 12, March 28, and March 29, 2007 in order to care for her mother who suffered from various medical conditions.

183.   Before March 2007, Plaintiff Nuss foresaw that she would need leave to care for her mother.  Plaintiff Nuss, therefore, submitted a medical certification to ARC on February 6, 2007 requesting intermittent leave to care for her mother.

184.   Defendant denied Plaintiff Nuss' application for FMLA leave and informed her that FMLA certification forms would only be processed if a corresponding absence has already begun and been reported in the AMTS .

**185.   Defendant's rejection of FMLA certifications when the untimeliness or nonreceipt of the submission is not the employee's fault constitutes unlawful interference with employees' rights under the FMLA.  Defendant has engaged in this form of unlawful interference with respect to Plaintiffs Abbatiello, Cornielle, Dunn, Reinheimer, Smith, Spinale, Terrell, Watson, Whigham and members of the class.**

186.   Plaintiff Abbatiello was unable to work from December 26 through December 29, 2006, due to an injury to his right foot and ankle.  This absence qualified as a serious health condition since he was incapacitated for more than three consecutive days and was under the continuing care of a health care provider.

187.   Plaintiff Abbatiello submitted an FMLA medical certification to ARC on January 22, 2007.  ARC denied the certification request as incomplete on February 9, 2007.  ARC gave him until February 23, 2007 to request administrative review.

188.   When Plaintiff Abbatiello contacted his HCP's office after the denial, he learned the office was closed for vacation until February 27, 2007.

189.   Plaintiff Abbatiello contacted ARC on or about February 21, 2007, explained his circumstances and requested an extension until February 28, 2007 to submit his amended certification form.  Plaintiff spoke to two customer service representatives at ARC and was advised to write a brief letter explaining the situation and to include the doctor's telephone number.

190.   On February 21, 2007, Plaintiff Abbatiello submitted a letter consistent with the advice he received from the ARC representatives.  On February 28, 2007,

Plaintiff Abbatiello's doctor made the necessary corrections to the certification form and the completed form was faxed to ARC.

191.   ARC upheld the FMLA leave denial on March 26, 2007 on the grounds the request for administrative review and revised certification form were untimely.

192.   The denial of FMLA coverage resulted in a chargeable absence under the ACP which Defendant used to place Plaintiff Abbatiello on Step One (1).

193.   Plaintiff Cornielle was absent from June 25, through June 27, 2007 due to the need to care for her son who suffered from a serious health condition under the FMLA.  On July 17, 2007, Plaintiff Cornielle requested FMLA leave to cover that absence and submitted a medical certification.

194.   Plaintiff Cornielle's request for FMLA leave was denied on July 23, 2007 on the grounds the certification form was not received by ARC.  On August 6, 2007, Plaintiff requested administrative review.

195.   Plaintiff Cornielle resubmitted her certification form along with a copy of the fax transmission showing the original timely submission of her certification form.

196.   On August 9, 2007 Plaintiff Cornielle's supervisor advised her the absence remained denied on the grounds ARC had not received the certification form.

197.   On August 14, 2007, Plaintiff Cornielle resubmitted her certification form, proof of the timeliness of her original request for FMLA leave, and proof of her timely submission of her request for administrative review.

198.   On September 19, 2007, Defendant acknowledged receipt of the August 14, 2007 request for administrative review.  Nevertheless, Defendant denied

administrative review on the grounds the request was made outside of the administrative review period.

199.   As a result of the denial of FMLA leave, Defendant counted Plaintiff Cornielle's absence against her under the ACP and then placed her on Step Four (4) on September 5, 2007 with an unpaid suspension.

200.   Plaintiff Cornielle filed a grievance regarding Defendant's actions and CWA attempted to resolve the grievance under its collective bargaining agreement ("CBA") with Verizon.  Defendant refused to overturn Cornielle's suspension or FMLA leave denial, despite proof that the original request had been timely submitted, stating that the company could not overturn ARC decisions.

201.   Plaintiff Dunn was absent due to a serious health condition from June 25, through June 28, 2007.  Plaintiff Dunn requested FMLA leave for this absence and submitted the required medical certification form.

202.   On July 23, 2007, Defendant denied Dunn's request for FMLA coverage on the grounds his certification form was not submitted within the required time frame. Plaintiff Dunn called ARC and explained that the forms were late because his HCP had been away on vacation.

203.   ARC advised Plaintiff Dunn to submit a letter explaining this.  He submitted a request for administrative review on July 24, 2007. ARC upheld the denial of Plaintiff Dunn's FMLA leave on August 21, 2007.

204.   As a result of this denial of FMLA leave, Plaintiff's absence was made chargeable.  Defendant used this absence to advance Plaintiff Dunn to Step Four (4) of the ACP with a fifteen (15) day suspension on August 21, 2007.

205.    Plaintiff Fountain had been granted intermittent FMLA leave from August 26, 2006 until August 28, 2007 for her chronic serious health condition of sinusitis.  That intermittent leave was for five (5) times per month, one (1) day for each episode.

206.    Plaintiff Fountain was absent on May 30, 2007 and May 31, 2007 due to her sinusitis.  ARC sent her a recertification form, because she had exceeded her certification for intermittent FMLA leave.

207.    The HCP erroneously submitted the recertification form to MetLife.

208.    Defendant denied plaintiff FMLA coverage on the grounds the recertification form was not received by ARC.  Plaintiff Fountain requested administrative review on July 2, 2007 and explained why her certification was late.  The absence remained denied.

209.    The denial made the absence chargeable under the ACP.  Defendant advanced Plaintiff Fountain to Step Three (3) of the Absence Control Plan on August 6, 2007 with a ten (10) day suspension due to that chargeable absence.

210.    Plaintiff Reinheimer suffers from chronic severe allergies and asthma due to environmental irritants.  This chronic condition qualifies as a serious health condition covered by FMLA in so far as it requires continuing care and treatment by a health care provider and periodically renders the plaintiff unable to work.

211.    Plaintiff Reinheimer's chronic condition caused her to be absent from work and unable to perform her regular job duties from March 13 until March 16, 2007.  Plaintiff Reinheimer requested FMLA leave for this absence and submitted medical certification.  On May 4, 2007, Defendant approved FMLA leave for the March 13 – March 16, 2007 absence.

212.   Plaintiff Reinheimer's medical certification indicated she would need intermittent leave three times per week with each absence lasting three days for a period of twelve months.  The certification form was given to ARC's physician advisor so that the advisor could contact Plaintiff's HCP concerning the intermittent leave request.

213.   Plaintiff Reinheimer incurred another absence on April 4, 2007 due to her chronic serious health condition.  She submitted a certification form for this absence which was denied on April 30, 2007

214.   Defendant's basis for this denial was a claim that ARC did not receive the certification form.

215.   On May 4, 2007, Plaintiff Reinheimer requested administrative review of the denial of her April 4 leave and resubmitted her medical certification information.  Her request for administrative review also included a copy of her original April 4 absence certification form with the submission date stamped on the top.  In addition, Plaintiff Reinheimer noted that her HCP's office faxed the same information on April 12, 2007.

216.   Despite this proof, ARC upheld the denial.  The reason given for this denial of administrative review was that Plaintiff Reinheimer included neither a note from the HCP nor a copy of the fax transmittal.

217.   Plaintiff Reinheimer also accrued absences on April 25 and 26, 2007 and from May 2 to May 4, 2007 due to the same condition that caused her April 4, 2007 absence.

218.   Plaintiff Reinheimer's request for FMLA leave was denied.  The reason given for this denial was that the certification form was not received on time.  Plaintiff submitted a letter from her HCP indicating that it was the HCP's fault that the

certification form was submitted late.  ARC refused to accept the letter from the health care provider.  Plaintiff's request for FMLA leave remained denied.

219.   Defendant's denials resulted in Plaintiff Reinheimer being sanctioned twice.  Defendant placed her on Step One (1) under the ACP on June 6, 2007 for the April absences.  Then on June 13, 2007, Defendant advanced Plaintiff Reinheimer to Step Two (2) for the May 2 absence.

220.   Plaintiff Smith requested FMLA leave on September 6, 2007 for an absence due to her husband's emergency hospitalization.  This absence qualified under the FMLA because it was caused by the need to care for a spouse with a serious health condition.

221.   On October 2, 2007, Defendant denied Plaintiff Smith's FMLA leave request on the grounds the certification form was not received.

222.   The certification form was one day late because plaintiff had difficulty getting the treating physician in the emergency room to fill out the forms.  This doctor initially refused to fill out the certification.  Plaintiff Smith returned to the emergency room again and succeeded in getting the emergency room doctor to fill out the forms but not before Defendant's 25-day deadline expired.

223.   Following her supervisor's advice, Plaintiff Smith wrote a letter to ARC on October 9, 2007, explaining why her paperwork was late.  ARC acknowledged the letter, but upheld the denial.

224.   Defendant sought administrative review, but Defendant denied Plaintiff Smith's request for FMLA administrative review.  The reason given for this denial was that the certification submission was late.

225.   The result of this denial of FMLA leave was a chargeable absence under the ACP which Defendant used to advance Plaintiff Smith to Step Three (3) with a 20 day suspension.

226.   Plaintiff Spinale's chronic depression and anxiety rendered him unable to perform his regular job duties on August 28 through 31, 2007.  Plaintiff Spinale's condition qualified as a chronic serious health condition covered by the FMLA insofar as Plaintiff was under the care and continuing treatment of a health care provider.

227.   Plaintiff Spinale's HCP submitted a timely certification for FMLA leave to Defendant on September, 21, 2007. On September 24, 2007, ARC denied Mr. Spinale's FMLA on the grounds the certification was not received.

228.   Defendant's erroneous rejection of Plaintiff Spinale's certification as untimely resulted in a chargeable absence which Defendant used on October 16, 2007 to advance Plaintiff Spinale to Step Four (4) with a ten (10) day suspension.

229.   Plaintiff Spinale elected to grieve his suspension through the Union. Despite the fact ARC is part of Defendant and proof of the timely submission of the certification, Defendant claimed it was unable to overturn a decision made by ARC and that Defendant did not administer FMLA.

230.   Plaintiff Terrell was unable to work from May 2, 2007 through May 16, 2007 due to a combination of three medical conditions.  This absence qualified as a serious health condition since Plaintiff was incapacitated for more than three consecutive days and was under the continuing care of a health care provider.

231.   Plaintiff Terrell sought FMLA leave.  The 25 days for submitting her medical certification expired on Sunday, May 27, 2007.  May 28, 2007 was Memorial

Day.  Plaintiff Terrell's HCP submitted the certification to ARC via fax on Tuesday, May 29, 2007.

232.   ARC denied the certification request on the grounds it was untimely. Plaintiff Terrell requested an administrative review and wrote a letter explaining the circumstances of the delay.  ARC upheld the denial of FMLA leave on the grounds the certification had been untimely submitted.

233.   The denial of FMLA coverage resulted in a chargeable absence under the ACP which Defendant used to place Plaintiff Terrell on Step Four (4) with a ten (10) day suspension.

234.   Plaintiff Watson suffered an on-the-job injury on July 28, 2008.  He was absent due to the injury, lumbar strain with severe pain, from September 2 through September 5, 2008.  Plaintiff Watson's condition qualified as a serious health condition under the FMLA, because he was unable to work for more than three days and was under the care and continuing treatment of an HCP.

235.   Plaintiff Watson had his HCP submit a certification form for the absence. The HCP made some mistakes in filling out the form.  Additionally, the HCP faxed the certification form to the Worker's Compensation vendor on September 26, 2008, because there was no fax number on the form.  The Worker's Compensation vendor did not forward the forms to ARC.

236.   Defendant denied Plaintiff Watson FMLA coverage on the grounds the certification was not received.

237.   On October 9, 2008 Plaintiff Watson requested administrative review on October 9, 2008.  Plaintiff Watson explained the faxing error and included a letter from

41