IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
_____x
THOMAS OAKLEY, LUCIANO ABBATIELLO,       )
STEVE ACIERNO, RON ADDEO, THOMAS         )
BARRY, ALYSON BRADLEY, CHARLES BRADY,    )
MARCEL CABRERA, JOSEPH CARBALLO,         )      09 Civ. 9175 (CM) (MHD)
MATTHEW CHRISTIE, LAUREN COLCLOUGH,      )
AILEEN CORNIELLE, MIKE DOWD, PAUL DUNN,  )
LATONIA EPPERSON JULIET FOUNTAIN, GAVIN  )      FIRST AMENDED
FRATER, BRENDA FRITCHY, NILSA GREENE,    )      COMPLAINT
ADRIANE GRZYBOWSKI, ELAINE HENDERSON,    )
GEORGE HOLMAN, KEVIN KAER, KELLY LEE,    )
JEFFREY LEROY, DENISE LOPEZ, ANGELA      )      JURY TRIAL DEMAND
LUCAS, MARY MARTINI, CHRISTOPHER         )
MCCARTHY, DENNIS MCGEE, NOEL MELENDEZ,   )
ED MIDDENDORF, DEBBIE MONROE, LAURA      )
NUSS, DAMIAN PARRA, RAY PEAY, KIMBERLY   )
PEREIRA, MICHELLE PROCK, PAM REINHEIMER, )
DAISY RIVERA, ANTHONY SICURANZO,     _   )
MARCHELLE SMITH, CHARLES SPINALE, TAMMI  )
TERRELL, JAMES TREADWAY, MINDY VEGA,     )
LORRIS WATSON, JUDITH WHIGHAM, and       )
ADRAINE WHITNEY, individually and on behalf of all )
others similarly situated,               )
                           Plaintiffs,   )
           v.                            )
                                         )
VERIZON COMMUNICATIONS INC., VERIZON     )
WASHINGTON D.C. INC., VERIZON MARYLAND   )
INC., VERIZON VIRGINIA INC., VERIZON WEST )
VIRGINIA INC., VERIZON SERVICES CORP.,   )
VERIZON CORPORATE SERVICES CORP.,        )
VERIZON ADVANCED DATA INC., VERIZON      )
AVENUE CORP., VERIZON SOUTH INC. (VIRGINA),)
VERIZON PENNSYLVANIA INC., VERIZON       )
DELAWARE INC., VERIZON NEW ENGLAND INC., )
VERIZON NEW JERSEY INC., VERIZON SELECT  )
SERVICES INC., VERIZON TELEPRODUCTS      )
CORP., VERIZON CONNECTED SOLUTIONS INC., )
VERIZON NEW YORK INC., and EMPIRE CITY   )
SUBWAY COMPANY (LIMITED),                )
                                         )
                           Defendants.   )
_____x
```

## SUMMARY OF THE ACTION

1.      This is a class action brought pursuant to the Family Medical Leave Act of 1993, 29 U.S.C. §2601, et seq.  ("FMLA") to correct various and willful employment practices, policies and procedures implemented by Verizon Communications, Inc. and its subsidiary companies Verizon Communications Inc., Verizon Washington D.C. Inc., Verizon Maryland Inc., Verizon Virginia Inc., Verizon West Virginia Inc., Verizon Services Corp., Verizon Corporate Services Corp., Verizon Advanced Data Inc., Verizon Avenue Corp., Verizon South Inc. (Virgina), Verizon Pennsylvania Inc., Verizon Delaware Inc., Verizon New England Inc., Verizon New Jersey Inc., Verizon Select Services Inc., Verizon Teleproducts Corp., Verizon Connected Solutions Inc., Verizon New York Inc., and Empire City Subway Company (Limited), (collectively referred to as "the Company") that interfere with employees' use of FMLA leave and retaliate against employees for use of that leave in violation of both the spirit and letter of the FMLA.

2.      The Company interferes with its employees' FMLA rights through its policies, practices and procedures which, among other things, deny eligible employees FMLA leave for qualifying absences, delay FMLA leave approval and/or administrative review of FMLA certification information submitted by  eligible employees and restrain and/or restrict employees from using FMLA leave to cover absences which are subsequent and related to absences for qualifying conditions for which the Company already approved FMLA leave or which are at that time under review for FMLA coverage.

3.      The Company follows a policy, practice and procedure which retaliates against employees who use FMLA leave, by extending the duration of sanctions imposed on employees before FMLA-protected absences took place.

4.      The Company revised its Absence Control Plan ("ACP") to increase the level of sanction for chargeable absences in retaliation for employees' use of FMLA leave time.

5.      As a result of the Company's FMLA policies, procedures and practices, employees have been fired, suspended, sanctioned and retaliated against when seeking to exercise or exercising their FMLA rights.  Eligible employees have been denied FMLA leave in violation of the law.

6.      The FMLA prohibits employers from interfering with, restraining, or denying qualified employees FMLA leave. Employers covered by the FMLA are required to grant leave to eligible employees.  Defendant Verizon Communications, Inc. is the successor company of Bell Atlantic, Inc. which itself was the product of a merger between Bell Atlantic, Inc. and NYNEX, Inc. These two corporations were two of the original Bell companies created by the divestiture of AT&T, Inc. in 1984.  All of the defendant corporations in this case utilize the same human resources department and personnel.  A Vice-President of Verizon Communications, Inc. is in charge of that department.  Each of the defendant corporations has adopted absence control plans which are similar in scope and procedures. All defendants utilize the same Absence Reporting Center ("ARC"). The policies and procedures of the ARC were developed by the human resources department of Verizon Communications, Inc. and are equally

3

applicable to each defendant and the employees of each defendant, including all named plaintiffs, in the same manner.

7.    Named Plaintiffs are employees and former employees of the Company affected by its unlawful policies, procedures, and practices, who seek to represent a Rule 23(b)(2) class.

8.    Named Plaintiffs seek appropriate class-wide injunctive and declaratory relief, as well as monetary damages, for the harm caused to them and members of the class by the Company's willful interference with eligible employee attempts to exercise rights under the FMLA and for retaliation against employees' use of FMLA leave.

## JURISDICTION

9.    This court has jurisdiction over this action pursuant to 28 U.S.C §1331 and 29 U.S. C. §2617 (a).  Plaintiffs' request for declaratory relief is authorized by 28 U.S.C. §§2201 and 2202, and by Rule 57 of the Federal Rules of Civil Procedure.

## VENUE

10.    The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Southern District of New York.  Venue is appropriate in this District because it is the judicial district where the Defendants  Verizon Communications Inc., Verizon New York Inc., Empire City Subway Company (Limited), Verizon Services Corp. and Verizon Corporate Services Corp. reside, are authorized to conduct business and are conducting business.

## PARTIES

11.    Plaintiff Luciano Abbatiello is and has been at all relevant times an employee of the Company.  Plaintiff Abbatiello holds the position of Splicer.  He resides

in Westbury, New York.  Plaintiff Abbatiello is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

12.     Plaintiff Steve Acierno is and has been at all relevant times an employee of the Company.  Plaintiff Acierno holds the position of Central Office Technician. Plaintiff Acierno resides in Bayport, New York.  Plaintiff Acierno is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

13.     Plaintiff Ron Addeo is and has been at all relevant times an employee of the Company. Plaintiff Addeo holds the position of Field Technician.  He resides in Brooklyn, New York.  Plaintiff Addeo is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

14.     Plaintiff Thomas Barry is and has been at all relevant times an employee of the Company.  Plaintiff Barry holds the position of Cable Splicer.  Plaintiff Barry resides in Poquoson, Virginia.  Plaintiff Barry is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

15.     Plaintiff Alyson Bradley is and has been at all relevant times an employee of the Company. Plaintiff Bradley holds the position of Customer Service Representative. Plaintiff Bradley resides in Woburn, MA.  Plaintiff Bradley is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

16.     Plaintiff Charles Brady is and has been at all relevant times an employee of the Company.  Plaintiff Brady holds the position of S.E.T.  Plaintiff Brady resides in Upper Darby, Pennsylvania.  Plaintiff Brady is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

17.     Plaintiff Marcel Cabrera is and has been at all relevant times an employee of the Company. Plaintiff Cabrera holds the position of Consultant. Plaintiff Cabrera resides in Elizabeth, New Jersey.  Plaintiff Cabrera is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

18.     Plaintiff Joseph Carballo is and has been at all relevant times an employee of the Company.  Plaintiff Carballo holds the position of Service Technician. He resides in Westbury, New York.  Plaintiff Carballo is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

19.     Plaintiff Lauren Colclough was an employee of the Company at all relevant times.  Plaintiff Colclough held the position of Service Representative until his termination on February 21, 2007.  He resides in Baltimore, Maryland.  Plaintiff Colclough was an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

20.     Plaintiff Aileen Cornielle is and has been at all relevant times an employee of the Company. Plaintiff Cornielle holds the position of Consultant.  She resides in Jersey City, New Jersey.  Plaintiff Cornielle is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

21.     Plaintiff Matthew Christie is and has been at all relevant times an employee of the Company. Plaintiff Christie holds the position of Field Technician. Plaintiff Christie resides in Brooklyn, New York.  Plaintiff Christie is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

22.     Plaintiff Mike Dowd is and has been at all relevant times an employee of the Company. Plaintiff Dowd holds the position of Service Technician.  He resides in

Brooklyn, New York.  Plaintiff Dowd is an eligible "employee" under the FMLA, 29

U.S.C. §2601(2).

    23.    Plaintiff Paul Dunn was at all relevant times an employee of the Company.

Plaintiff Dunn held the position of Consultant.  Plaintiff Dunn resides in Edison, New

Jersey.  Plaintiff Dunn was an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

    24.    Plaintiff Latonia Epperson is and has at all relevant times been an

employee of the Company.  Plaintiff Epperson holds the position of Field Technician.

Plaintiff Epperson resides in Brooklyn, New York.  Plaintiff Epperson is an eligible

"employee" under the FMLA, 29 U.S.C. §2601(2).

    25.    Plaintiff Juliet Fountain was at all relevant times an employee of the

Company.  Prior to leaving her employment with the Company, Plaintiff Fountain held

the position of Consultant.  She resides in Salisbury, Maryland.  Plaintiff Fountain is an

eligible "employee" under the FMLA, 29 U.S. C. §2601(2).

    26.    Plaintiff Gavin Frater was an employee of the Company at all relevant

times. Plaintiff Frater held the position of a Sales and Service Specialist until his

termination.  He resides in Summit, New Jersey.   Plaintiff Frater is an eligible

"employee" under the FMLA, 29 U.S.C. §2601(2).

    27.    Plaintiff Brenda Fritchy was at all relevant times an employee of the

Company. Plaintiff Fritchy holds the position of Customer Service Representative.

Plaintiff Fritchy resides in Derry, New Hampshire. Plaintiff Fritchy is an eligible

"employee" under the FMLA, 29 U.S.C. §2601(2).

    28.    Plaintiff Nilsa Greene is and has been at all relevant times an employee of

the Company.  She holds the position of General Clerk.  Plaintiff Greene resides in

Vineland, New Jersey.  Plaintiff Greene is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

29.     Plaintiff Adriane Grzybowski is and has been at all relevant times an employee of the Company.  Plaintiff Grzybowski holds the position of Sales Associate. She resides in Clark Summit, Pennsylvania.  Plaintiff Grzybowski is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

30.     Plaintiff Elaine Henderson is and has been at all relevant times an employee of the Company.  Plaintiff Henderson holds the position of Consultant. Plaintiff Henderson resides in Lindenwold, New Jersey.  Plaintiff Henderson is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

31.     Plaintiff George Holman was at all relevant times an employee of the Company. Plaintiff Holman held the position of Splicer until he was terminated. Plaintiff Holman resides in Newark, Delaware.  Plaintiff Holman is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

32.     Plaintiff Kevin Kaer is and has been at all relevant times an employee of the Company.  Plaintiff Kaer holds the position of TTA.  Plaintiff Kaer resides in Oceanside, New York.  Plaintiff Kaer is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

33.     Plaintiff Kelly Lee is and has been at all relevant times an employee of the Company. Plaintiff Lee resides in West Islip, New York. Plaintiff Lee is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

34.     Plaintiff Jeffrey Leroy is and has been at all relevant times an employee of the Company.  Plaintiff Leroy holds the position of Technician.  Plaintiff Leroy resides in

Brooklyn, New York.  Plaintiff Leroy is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

35.  Plaintiff Denise Lopez is and has been at all relevant times an employee of tthe Company.  Plaintiff Lopez holds the position of Customer Service Representative.  She resides in Lancaster, Pennsylvania.  Plaintiff  Lopez is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

36.  Plaintiff Angela Lucas is and has been at all relevant times an employee of the Company. Plaintiff Lucas holds the position of Consultant. Plaintiff Lucas resides in Chesapeake, Virginia.  Plaintiff Lucas is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

37.  Plaintiff Mary Martini is and has been at all relevant times an employee of the Company. Plaintiff Martini holds the position of Maintenance Administrator.  She resides in Conshohocken, Pennsylvania.  Ms. Martini is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

38.  Plaintiff Christopher McCarthy is and has been at all relevant times an employee of the Company.  Plaintiff McCarthy holds the position of Service Technician. He resides in Delran, New Jersey.  Plaintiff McCarthy is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

39.  Plaintiff Dennis McGee is and has been at all relevant times an employee of the Company. Plaintiff McGee holds the position of Field Technician.  Plaintiff McGee resides in Coram, New York.  Plaintiff McGee is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

40.     Noel Melendez is and has been at all relevant times an employee of the Company. Plaintiff Melendez holds the position of Service Technician. Plaintiff Melendez resides in Virginia Beach, Virginia.  Plaintiff Melendez is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

41.     Plaintiff Ed Middendorf is and has been at all relevant times an employee of the Company. Plaintiff Middendorf holds the position of Field Technician. He resides in Staten Island, New York. Plaintiff Middendorf is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

42.     Plaintiff Debbie Monroe was at all relevant times an employee of the Company. Plaintiff Monroe held the position of Credit Specialist until she was terminated on June 27, 2008.  Plaintiff Monroe resides in Mt. Laurel,  New Jersey. Plaintiff Monroe was an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

43.     Plaintiff Laura Nuss is and has been at all relevant times an employee of the Company.  Plaintiff Nuss is a Directory Assistance Operator and Administrative Assistant.  She resides in Pine City, New York.  Plaintiff Nuss is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

44.     Plaintiff Thomas Oakley is and has been at all relevant times an employee of the Company.  He resides in Springville, New York.  Plaintiff Oakley holds the position of Field Technician.  Plaintiff Oakley is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

45.     Plaintiff Damian Parra is and has been at all relevant times an employee of the Company. Plaintiff Parra holds the position of Consultant. He resides in Plainfield,

New Jersey.  Plaintiff Parra is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

46.     Plaintiff Ray Peay is and has been at all relevant times an employee of the Company.  Plaintiff Peay holds the position of Field Technician.  He resides in Bronx, New York.  Plaintiff Peay is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

47.     Plaintiff Kimberly Pereira is and has been at all relevant times an employee of the Company. Plaintiff Pereira holds the position of Customer Service Representative. She resides in Derry, New Hampshire. Plaintiff Pereira is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

48.     Plaintiff Michelle Prock was an employee of the Company at all relevant times. Plaintiff Prock held the position of a Customer Service Associate until the time of her termination in April of 2007.  She resides in Ballston Spa,  New York.  Plaintiff Prock was an eligible "employee" under the FMLA, 29 U. S. C. §2601(2).

49.     Plaintiff Pam Reinheimer is and has been at all relevant times an employee of the Company. Plaintiff Reinheimer holds the position of Customer Service Representative.  Plaintiff Reinheimer resides in Upper St. Clair, Pennsylvania.  Plaintiff Reinheimer is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

50.     Plaintiff Daisy Rivera is and has been at all relevant times an employee of the Company.  Plaintiff Rivera holds the position of Consultant.  Plaintiff Rivera resides in Delaware Water Gap, Pennsylvania.  Plaintiff Rivera is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

51.     Plaintiff Anthony Sicuranzo is and has been at all relevant times an employee of the Company. Plaintiff Sicuranzo holds the position of Field Technician.

He resides in White Plains, New York.  Plaintiff Sicuranzo is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

52.    Plaintiff Marchelle Smith is and has been at all relevant times an employee of the Company.  Plaintiff Smith holds the position of Sales Consultant.  Plaintiff Smith resides in Berlin, Maryland.  Plaintiff Smith is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

53.    Plaintiff Charles Spinale was at all relevant times an employee of the Company. Plaintiff Spinale held the position of Outside Field Technician when he was terminated on September 26, 2008.  Plaintiff Spinale resides in Holbrook, New York. Plaintiff Spinale was an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

54.    Plaintiff Tammi Terrell is and has been at all relevant times an employee of the Company.  Plaintiff Terrell holds the position of Customer Service Representative. Plaintiff Terrell resides in Albany, New York.  Plaintiff Terrell is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

55.    Plaintiff James Treadway was at all relevant times an employee of the Company. Plaintiff Treadway held the position of Consultant.  Plaintiff Treadway resides in South Charleston, West Virginia.  Plaintiff Treadway was an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

56.    Plaintiff Mindy Vega is and has been at all relevant times an employee of the Company. Plaintiff Vega holds the position of Consultant.  Plaintiff Vega resides in North Bergen, New Jersey.  Plaintiff Vega is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

57.     Plaintiff Lorris Watson is and has been at all relevant times an employee of the Company. Plaintiff Watson holds the position of Cable Splicing Technician. Plaintiff Watson resides in Riverdale, Maryland.  Plaintiff Watson is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

58.     Plaintiff Judith Whigham is and has been at all relevant times an employee of the Company.  Plaintiff Whigham holds the position of Consultant.  Plaintiff Whigham resides in East Brunswick, New Jersey.  Plaintiff Whigham is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

59.     Plaintiff Adraine Whitney is and has been at all relevant times an employee of the Company. Plaintiff Whitney holds the position of Customer Service Administrator.  She resides in Clifton Park, New York.  Ms. Whitney is an eligible "employee" under the FMLA, 29 U.S.C. §2601(2).

60.     Defendant Verizon Communications, Inc. is a telecommunications business engaged in interstate commerce incorporated in the State of Delaware with its principal executive offices located in New York, New York.  At all relevant times, Defendant Verizon Communications, Inc. continuously had at least fifty employees employed within 75 miles of each other for at least 20 calendar workweeks.  Defendant Verizon Communications, Inc. is an "employer" under the FMLA, 29 U.S.C. §2601(4).

61.     Defendant Verizon Communications, Inc. does business through various subsidiaries, including  principal subsidiaries which are named Verizon Delaware, Inc., Verizon Maryland, Inc., Verizon New England, Inc., Verizon New Jersey, Inc., Verizon New York, Inc., Verizon Pennsylvania, Inc., Verizon Virginia, Inc., Verizon Washington, D.C., Inc., and Verizon West Virginia, Inc., Verizon Services Corp., Verizon Corporate

Services Corp., Verizon Advanced Data Inc., Verizon Avenue Corp., Verizon South Inc.

(Virgina), Verizon Select Services Inc., Verizon Teleproducts Corp., Verizon Connected

Solutions Inc. and Empire City Subway Company (Limited). Each subsidiary has

continuously employed at least fifty employees employed within 75 miles of each other

for at least 20 calendar work weeks.  All defendant subsidiary companies are

"employers" under the FMLA, 29 U.S.C. § 2601(4).

## CLASS ALLEGATIONS

62.    This action is brought by the Named Plaintiffs as a class action pursuant

to Rule 23 of the Federal Rules of Civil Procedure.  The class represented by the

Named Plaintiffs, consists of all current and former employees of the Company who,

within three years preceding the filing of this Complaint, were eligible for FMLA leave

and had their rights under the FMLA violated by the Company's adoption of the unlawful

policies, practices and procedures, as set forth more particularly below, which have

class-wide application and effect.

63.    The exact size of the class is not presently known and can only truly be

determined through discovery.  Plaintiffs believe, however, that the class is made up of

thousands of current and former employees of the Company throughout a wide-ranging

geographic area.  The policies, practices and procedures challenged in this Complaint

have been applied and continue to be applied to the Company's employees in the

States of Delaware, New York, New Jersey, Pennsylvania, Maryland, Virginia,

Washington, D.C., West Virginia, and states in New England.  Given the vastness of

this class the joinder of individual members would be impractical.

64.    The questions of law and fact integral to a determination of whether the Company's policies, practices and procedures have negatively impacted the Company's employees are common to the members of the class.

65.    The claims asserted are typical of those of the members of the class.

66.    The Named Plaintiffs have a substantial interest in the outcome of this litigation insofar as their rights and the rights of the Company's other non-management employees are being violated under the FMLA.

67.    The Named Plaintiffs will fairly and adequately protect the interests of the class.

68.    Prosecution of separate actions by individual class members challenging the Company's policies, practices and procedures that have class wide implication and effect would create the risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for the the Company.

69.    Prosecution of separate actions would create the risk that adjudications of individual complaints would be dispositive of the interests of members of the class who are not parties to those individual actions.  Individual actions would substantially impair or impede the ability of nonparties to protect their interests.

70.    In adopting and implementing the policies, practices and procedures alleged herein, the Company has acted or refused to act on grounds that are generally applicable to the class, thereby making appropriate final injunctive and/or declaratory relief with respect to the class as a whole.

71.     The class action is superior to other available methods for fairly and efficiently adjudicating the controversy concerning whether the Company's policies, practices and procedures that have class-wide impact and effect are in violation of the FMLA.

## THE FAMILY MEDICAL LEAVE ACT

72.     The purpose of the FMLA statute is to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families and to promote national interests in preserving family integrity, and to entitle employees to take reasonable leave for medical reasons including time to care for children, spouses and parents.

73.     The United States Department of Labor ("DOL") has issued implementing regulations intended to interpret and enforce compliance with the requirements of the FMLA ("FMLA Regulations").

74.     The FMLA Regulations were revised in January 2009.  Most of the issues presented here occurred before the FMLA Regulations were amended. When it is necessary to distinguish the FMLA Regulations, the present regulations will be referred to as the "current" regulations, and the pre-January 2009 regulations will be referred to as the "old" regulations.  The intent of the FMLA is the same under both sets of regulations with regard to the obligations of a covered employer to covered employees.

75.     The Company's policies, practices and procedures which interfere with employees' use of FMLA leave and which retaliate against employees' use of approved FMLA leave, as complained of here, are in violation of the FMLA under both the "old" and the "current" regulations.

76.     Employers covered by the FMLA must grant up to 12 weeks of job-protected unpaid leave during any 12 month period to eligible, covered employees for the following reasons: 1)  the birth and care of the eligible employee's child, or placement of a child with the employee for adoption or foster care; 2) the care of an immediate family member  who has a serious health condition; or 3)  the care of the employee's own serious health condition.

77.     Defendant companies are "employers" covered by the FMLA, because each is engaged in an industry or activity affecting commerce, and each employs 50 or more employees for each working day during each of 20 or more calendar work weeks in a year.  Defendant companies' designations as covered employers under the FMLA include any person who acts directly or indirectly in the interest of the employer.

78.     An "eligible employee" is one who has been employed by the employer for at least 12  months and who has worked at least 1250 hours during the 12-month period immediately proceeding the commencement of the leave, and is employed at a worksite where 50 or more employees are employed  by the employer within 75 miles of that worksite.

79.     A "serious health condition" entitling employees to FMLA leave is defined as an illness, injury, impairment, or physical or mental condition that involves inpatient care and/or the continuing treatment by a health care provider.

80.     A "heath care provider" ("HCP") includes any doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the state in which the doctor practices or any of the other categories of persons the United States Secretary of Labor determines is capable of providing health care services.

81.     The regulations mandate that an employee must provide the employer notice of the need to take FMLA leave thirty days in advance of the date  the leave is to begin, if practicable.  Thus, the regulations require an employee to seek pre-certification for foreseeable future absences that may qualify for FMLA leave coverage.

82.     The FMLA gives an employer the right to require an employee seeking FMLA leave to submit a medical certification in support of his/her FMLA leave request, whether leave is sought before or after an absence.

83.     The FMLA places obligations on an employer where the employer considers an employee's submitted certification to be incomplete.  The old regulations required that the employee be informed of the problem and be given a reasonable time within which to submit a corrected certification.  The current regulations require the employer to notify the employee of the deficiency and inform the employee in writing as to what additional information is necessary to make the certification complete and sufficient.

84.     Under the current regulations, an employer must provide an employee with the opportunity to cure the deficiency by submitting an amended certification within seven (7) days, unless seven calendar days is not practicable.  Only after the seven (7) day period for curing the specified deficiencies has passed, may the employer deny FMLA coverage on the grounds that a certification is incomplete.

85.     The DOL's regulations provide an employer with the right, under certain circumstances, to contact an employee's HCP when a certification is unclear or ambiguous or to require an employee to obtain a second opinion at the employer's expense.

86.    Under the DOL's '30 day rule,' an employer must limit its requests for FMLA recertification.  An employer may generally request review only once every 30 days and only in connection with an actual absence.  If a certification is for 30 days, an employer must wait longer than 30 days to request the employee to recertify.

87.    In all cases the employer can request recertification every six months, even when a certification exceeds six months.  An employer can request recertification before 30 days under very limited circumstances.  The employer can request "early" recertification if an employee requests an extension of approved FMLA leave or if the circumstances of the original certification have changed significantly.

## BACKGROUND FACTS COMMON TO ALL CLAIMS

### The Company's Absence Control Plan

88.      The Company has an attendance policy, the Absence Control Plan ("ACP"),  which has covered the Company's employees at various times since 1964. The Named Plaintiffs are all either currently covered by the Company's ACP, were covered by some version of the ACP prior to the Company terminating their employment, or were covered by some version of the ACP prior to leaving their employment. There is a Mid-Atlantic ACP (covering employees in Delaware, Maryland, New Jersey, Pennsylvania, Virginia, Washington, DC and West Virginia), a New England ACP and a New York ACP.

89.      The Company's ACP has some regional variations.  For example, the plan covering the Company's Mid-Atlantic region includes tardiness and absence provisions.  Defendant Verizon New York has a separate tardiness control plan to address employee lateness.

90.      The Company's ACPs affect the Named Plaintiffs and the proposed class members  because they establish the rules and regulations for imposing discipline against employees for being absent.

91.      The Company's  ACPs are designed to encourage employees to avoid missing work.  The ACP instructs employees to maintain a reasonable level of health, to take precautions against illness and to live and work safely so that employees will not need to miss work.

92.     In the ACPs, "good attendance" is repeatedly mentioned as an essential job requirement. The ACPs explain that employee absence impedes the Company's ability to remain competitive and to provide the service the Company's customers require.

93.     The ACPs penalize employees for absenteeism so they will minimize time off work. Employee absences result in progressive discipline, called "steps", which may be paired with suspension without pay or termination.

94.     Depending on an employee's length of service, location or when the employee's improper conduct occurred, the ACP consists of four, five, or six steps.

95.     When an employee incurs a "chargeable absence" under the ACPs, the Company places him/her on a step.  At the time an employee is "stepped," a date is set on which the employee will come off of that step.  Reverting to a lower step under the ACPs is known as "retrogression."   If the employee does not incur any chargeable absences before the retrogression date, the employee will be removed from the step.

96.     The ACPs' sanctions and penalties only apply to "chargeable absences." Because FMLA-covered absences are protected by law, they should not be treated as chargeable.

97.     Under the policies, practices and procedures which are the subject of this Complaint, FMLA-eligible employees are often improperly denied FMLA coverage.  An absence becomes chargeable when the employer denies the employee FMLA coverage.  Chargeable absences result in the employer imposing discipline against the employee under the ACP.

98.    The Company's policy, practice and procedure is to extend the step's retrogression date for employees who take approved FMLA leave.

**The Company's FMLA Certification Process and Procedures**

99.    Defendants all use the same internal department, the Absence Reporting Center ("ARC"), to respond to and process employee requests for medical leaves of absence under the FMLA.  ARC is responsible for processing FMLA leave requests made by Verizon employees.  This responsibility applies whether the leave sought is continuous in nature or intermittent leave that is needed for a chronic condition.

100.    At all times relevant to this case, the Company has authorized and ratified all unlawful policies, procedures and practices undertaken by ARC personnel against employees who sought to exercise or exercised their FMLA rights as described in this Complaint.

101.    The Company requires all employees who are absent to report the absence to their supervisor for reporting to ARC.  The supervisor enters the dates of the absence into the Company's Absence Management Tracking System ("AMTS").

102.    An employee calling in absent is required to inform his/her supervisor whether the absence is "new" or  "subsequent and related" to a previously reported absence involving the same serious health condition which may or may not already have been approved for FMLA leave.

103.    For every absence, ARC makes a preliminary determination as to whether the employee is eligible for FMLA leave, i.e., whether the employee has 12 months of service with the Company, has worked 1250 hours and has available FMLA leave. The Company informs employees who have been absent that if they wish to obtain FMLA

leave time they must submit a certification and  that an unapproved absence will be classified as chargeable.

104.   ARC issues a preliminary determination letter to the employee for every absence, informing the employee whether or not s/he is eligible for FMLA leave coverage.

105.   If the employee wishes to have an absence approved for FMLA coverage, the employee must submit an FMLA certification to ARC.  An employee has 25 days from the date of absence to file an FMLA certification form with ARC.

106.   An FMLA certification form must be filled out by an employee's healthcare provider ("HCP") or the family member's HCP to support his or her application for FMLA leave.  The HCP indicates the date on which the serious health condition began, its probable duration, appropriate medical facts related to the condition, the dates of future treatment and, if necessary, a statement of the need for intermittent leave.

107.   In the past when an employee was eligible for FMLA leave, the Company would include a certification form with its preliminary determination letter to the employee.  The form would be dated with the first day absent ("FDA") recorded in the AMTS.

108.   It is now the Company's practice to mail the preliminary approval letter without including a certification form.

109.   Employees are now instructed to download an FMLA certification form from the company website, or to obtain one from a supervisor.  As a result, employees are responsible for entering the FDA on the certification form themselves.

110.    When an employee submits a certification form before the end of the 25 day period, and ARC concludes that the certification form is incomplete, the employee is sometimes, but not always, given notice and allowed the balance of the 25 days to correct and re-submit the form.

111.    Under no circumstances is an employee ever given more than 25 days to submit the initial certification form.

112.    The Company provides an opportunity for the employee to appeal a denial of FMLA leave through a process the Company calls "administrative review." Regardless of the reason for the denial employees are given 14 days to request administrative review and to submit an amended certification form to correct any alleged deficiencies.

113.    The Company commonly states that a certification was denied on the grounds it was vague, incomplete, complete but insufficient to show that the leave qualifies under the FMLA guidelines, or was untimely filed.

114.    The Company seldom provides information setting forth what different or additional information is needed to make a certification complete and sufficient.

115.    In the case of an incomplete certification, the Company indicates only which sections are not complete, but the Company does not provide information indicating what is wrong with an ostensibly complete form.

116.    It is the Company's regular policy, practice and procedure to provide little information to employees about what is needed to cure a certification. The information provided to employees requesting certification is scripted. Additional information is given only if an employee specifically asks about an issue.

24

117.    When a certification is denied and/or denied administrative review, FMLA leave/coverage is denied.  The absence then becomes "chargeable."  If an absence is chargeable, the employee is "stepped" under the ACP.  Chargeable absences may result in the imposition of discipline against the employee under the ACP.

118.    When an FMLA certification is approved, the employee's absence receives FMLA protection.  "Nonchargeable" time off is not subject to discipline under the ACP.  Employees who are approved for intermittent FMLA leave related to the same condition are granted "nonchargeable" intermittent leave time.

### The Company Refuses to Pre-certify Foreseeable Absences as Required by the Statute.

119.    The Company refuses to allow employees to pre-certify foreseeable absences.  When employees submit FMLA certifications in advance of a foreseeable absence, the Company denies FMLA certification because the date on the certification does not match an absence recorded in the AMTS.

120.    When the Company refuses to pre-certify absences and engages in the tactics outlined below employees are unable to get approval for ongoing conditions that qualify for FMLA coverage despite their eligibility for such coverage.

121.    At least until November 2009, when the Company represented that it had changed this policy, its refusal to pre-certify FMLA leave resulted in disciplinary sanctions against employees including progression through steps of the ACP, suspensions and termination.  The Company's policy and practice of refusing to pre-certify directly conflicts with obligations the FMLA expressly places upon employees seeking FMLA leave.

**Valid FMLA Certifications Are Denied When They Are Submitted
Late Due to No Fault of the Employee.**

122.    ARC systematically rejects certifications and amended certifications that are late through no fault of the employee.

123.     ARC denies otherwise valid FMLA leave requests as untimely even where an employee's HCP attests that the HCP is responsible for the submission of the certification outside of the 25-day or 14-day period, as applicable.

124.    ARC denies  valid FMLA leave requests as untimely when ARC loses certification forms  or does not receive them even where employees provide proof of timely mailing or faxing by employees and/or their HCPs.

125.    The Company willfully violates the FMLA by adhering to policies, practices and procedures by which the Company refuses to review certification forms received outside of the relevant time period through no fault of the employee.

126.    The application of these policies, practices and procedures results in disciplinary sanctions against employees including progression through steps of the ACP, suspensions and termination.

**The Company Refuses to  Review Valid FMLA Certifications
Or Grant FMLA Leave When Supervisors Fail
to Accurately Record Employee Absences.**

127.    Employees often report an absence as "subsequent and related" to a previously FMLA-approved absence but their supervisors incorrectly enter the subsequent and related absence as "new" in the AMTS.

128.    This misreporting of subsequent and related absences may result in the denial of FMLA coverage to employees on the grounds of ineligibility even though the employees have approved certifications on file.  Additionally, denial of FMLA coverage

may also occur because the employee does not know a new certification is required by the Company for the "subsequent and related" absence, because the original absence already was covered and approved for intermittent leave.

129.   Employees are prohibited from unilaterally informing ARC about absence reporting errors and must rely on their supervisors to make the correction in the AMTS. Upon information and belief, supervisors are often reluctant to change the status of absences previously entered into the AMTS, leaving employees with little or no recourse when an absence is intentionally or negligently recorded incorrectly.

130.   When certifications for FMLA leave are denied because there is no corresponding absence in the AMTS, employee absences become chargeable.

131.   This failure to accurately report absences for FMLA purposes results in disciplinary sanctions against employees including progression through steps of the ACP, suspensions and termination.

### Valid FMLA Certifications Are Regularly Delayed And Denied Because of the Company's Handling of  Physician Review.

132.   The Company routinely abuses the power of physician review by delaying review of certifications which it deems to be unclear or ambiguous.

133.   The Company routinely fails to contact HCP's to resolve  simple problems with submitted certifications, such as  clarifying  or authenticating  whether an HCP or his agent failed to initial changes to the certification form or (in the case of the agent) to identify their relationship to the HCP when s/he  made changes to a certification.

134.   The Company also regularly delays physician review of certifications which include intermittent leave time the Company finds objectionable.  The Company

regularly delays certifications by doing physician review and then rarely, if ever, exercises its option to seek a second opinion under the process set forth in the FMLA.

135.    The Company's abuse of the physician review process results in disciplinary sanctions against employees including progression through steps of the ACP, suspensions and termination.

**The Company Regularly Delays Review and Approval of Valid FMLA Certifications Causing Denial of FMLA Certification And Intermittent Leave Time.**

136.    The FMLA charges employers with the responsibility of providing prompt determinations on FMLA leave certifications.

137.     Nevertheless, the Company routinely takes several weeks and, sometimes, even months to make FMLA determinations.

138.    The Company requires employees to submit a separate FMLA certification form for each absence until a certification for intermittent leave has been granted. Employees who fail to submit new certifications, because they have an absence they believe is covered under a previously-submitted certification for a prior absence due to the same condition, are automatically denied FMLA coverage.  The Company also later denies the employee's request for administrative review on the grounds of failure to submit an initial certification.

139.    The Company's systematic delay of the processing of FMLA certifications interferes with employees' use of FMLA leave and taxes them with chargeable absences that should be approved as part of an intermittent leave plan related to a valid FMLA certification.

140.    The Company's persistent delays in reviewing and approving employees' FMLA certifications results in disciplinary sanctions against employees including progression through steps of the ACP, suspensions and termination.

**The Company Fails to Provide Correct and Complete Information to Employees Regarding Rejected Certifications.**

141.    The Company regularly provides incomplete and incorrect information to employees about how to cure disapproved certifications for submission to administrative review.

142.    The Company's initial denial letter states that administrative review may be granted where the employee provides supporting documentation indicating that the untimely submission of certification  was not the fault of the employee.

143.    The Company's denial letter is misleading.  Under the Company's regular practice, only a note from an employee's HCP attesting that untimeliness was  the HCP's fault  will result in the overturning of a denial of FMLA for untimeliness.  The Company routinely rejects documentation provided by the employee explaining the situation and the certification form is denied administrative review.

144.    ARC representatives routinely tell employees by phone that ARC's denial letter states that certification forms which are untimely  due to a failure on the HCP's part require a note from the HCP. The ARC denial letter makes no such statement.

145.    At least until November 2009, when the Company represented that it had changed this policy, it was ARC's practice to incorrectly tell employees that an oral request for administrative review was sufficient to secure review.   The Company refused, however, to administratively review certifications  unless the submission for review included a signed writing specifically requesting administrative review.

146.   ARC only provides information based on the specific questions asked by an employee.  If the employee does not ask about an aspect of the certification form, ARC does not volunteer information about that aspect of the certification form.

147.   The Company's  willful refusal to provide advice to  employees on how to remedy rejected certification submissions for administrative review results in disciplinary sanctions against employees including progression through steps of the ACP, suspensions and termination.

**The Company Denies Valid, Timely Applications for Administrative Review Where the Submission Does Not Specifically Request "Administrative Review" or Include the Employee's Signature.**

148.   An employee's submission of an amended certification form within the Company's 14 day-time period for seeking administrative review puts the Company on notice that an employee is requesting administrative review of the FMLA leave denial.

149.   The Company consistently refuses to review valid amended certification forms when an employee does not include a signed writing specifically requesting "administrative review," even though it is obvious that the employee is appealing the decision.

150.   Even when an employee writes the phrase "administrative review" on the paperwork, ARC still refuses to review amended certification forms if the employee does not also include his/her signature along with the request for "administrative review."

151.   The Company's denial of administrative review where an employee does not use that specific phrase or include his/her signature where those words are used results in disciplinary sanctions against employees including progression through steps of the ACP, suspensions and termination.

### The Company Rejects Valid FMLA Certifications When HCPs or Their Agents Do Not Initial Amendments or the Agent Does Not Identify His/Her Relationship to the HCP.

152.     The Company follows a policy, practice and procedure of denying administrative review to FMLA leave certifications if an amended certification form has not been initialed by the employee's HCP or the HCP's agent.

153.     The Company also systematically denies administrative review of valid amended certifications if the HCP's agent makes the amendments, but does not state their relationship to the HCP, in writing.

154.      When the Company disregards valid certifications for a presumed lack of authenticity, FMLA certification of valid absences is denied and the absences become chargeable.

155.     The Company's denial of administrative review to valid FMLA leave certifications due to the lack of an HCP, HCP agent's initials or agent's explanation of the agent's  relationship to the HCP, i.e., presuming inauthenticity, results in disciplinary sanctions against FMLA-eligible employees including progression through steps of the ACP, suspensions and/or termination.

### The Company Makes Excessive Requests for Recertification.

156.     The Company adheres to a policy, practice and procedure of requesting recertification of absence time for serious health conditions that have been previously certified for FMLA coverage.  The Company requires recertification more often than is allowed by the statute.

157.     Notwithstanding the FMLA's restrictions, the Company regularly requires recertification of each and every absence where an employee exceeds the frequency or

the duration stated in the initial certification even in instances where the excess time is negligible and/or the circumstances of the certification have not changed significantly.

158.    Failure to submit recertification forms results in revocation of  the previously approved FMLA leave, making formerly FMLA-protected absences chargeable under the ACP.

159.    The Company's adherence to its policy, practice and procedure of requesting excessive recertification results in disciplinary sanctions against FMLA qualifying and eligible employees, including progression through steps of the ACP, suspensions and termination.

**The Company Regularly Denies Valid FMLA Certifications Despite Disability Approval for the Same Absence and Condition.**

160.    The Company's stated custom has been to grant FMLA leave coverage to employees who have been granted disability leave within 39 days of applying for FMLA leave.

161.    MetLife administers the Company's disability program, but is not involved in FMLA coverage determinations.

162.    Company policy indicates that if MetLife approves an employee's disability within 39 days of the date an absence is reported, FMLA coverage is automatically approved.  Likewise, the Company's stated custom is that where disability coverage is extended within the established timeframes, so too is the FMLA coverage.

163.    Despite the Company's stated custom, it is the Company's practice to deny FMLA certification even if disability coverage is approved by MetLife.

164.    The Company's denial of FMLA coverage for valid absences despite the grant of disability coverage to these same absences makes them chargeable.

165.    The Company's practice of not approving FMLA certification for time covered by disability leave results in disciplinary sanctions against FMLA qualifying and eligible employees including progression through steps of the ACP, suspensions and termination.

**The Company Extends the Retrogression Date of Employees Who Use FMLA Leave, Thereby Penalizing Them for Taking Protected Leave.**

166.    When an employee is placed on a step under the ACP, the Company sets a date on which the employee will revert back to a lower step under the ACP if the employee does not incur any additional chargeable absences before that date.

167.    The reversion to a lower step described in ¶  is known as "retrogression."

168.    An employee's use of approved FMLA leave adversely affects a previously established retrogression date.

169.    The Company's policies, practices and procedures are designed to extend the time of the employee's retrogression period by the amount of approved FMLA leave an employee uses, moving the date forward.

170.    This extension of the retrogression date occurs whether the FMLA leave taken is continuous or intermittent.

171.    The Company's extension of retrogression dates as a result of employees' use of approved FMLA leave results in disciplinary sanctions against FMLA qualifying and eligible employees including more rapid progression through steps of the ACP, suspensions and termination.

**The Company's Revision To Its Absence Control Plan.**

172.   On November 5, 2006, Defendant Verizon New York put a revised version of the ACP into effect in response to employees' use of FMLA leave time.  The revised ACP was subsequently put into effect by other Defendants.

173.   The revised plan increased the severity of sanction under the ACP for chargeable absences.

174.   As a result of the ACP revisions, employees incurring chargeable absences progress through the ACP steps with their corresponding discipline quicker than had previously been the case.

175.   The Company's revision of the ACPs resulted in more severe and frequent sanctions, in a shorter period of time, including more rapid progression through steps of the ACP, suspensions and termination.

## CLAIMS FOR RELIEF

## COUNT I

### (FMLA Class-Wide Claims for Declaratory and Injunctive Relief)

176.   The Named Plaintiffs hereby incorporate Paragraphs 1 through  of this Complaint as if fully set forth herein.

177.   The Company's policies, practices and procedures alleged in this First Amended Complaint have interfered with and denied the rights of the Named Plaintiffs and other employees in the class in violation of the FMLA.

178.   The Company's policies, practices and procedures as alleged in this Complaint constitute retaliation against Named Plaintiffs and similarly situated employees in the class for exercising their rights under the FMLA.

179.    The Named Plaintiffs have all been personally subjected to one or more of the Company's challenged policies, practices and procedures as set forth more specifically in Counts II, III and IV.

180.    The Named Plaintiffs and similarly situated employees in the class are entitled to declaratory judgment that the challenged policies, practices, procedures and actions adopted and applied by the Company are unlawful and violate the FMLA.

181.    The Named Plaintiffs have not made previous application to this Court for the injunctive relief sought by the instant action.

182.    Unless injunctive relief is granted, the Company's employees will continue to be irreparably harmed by the Company's continued violations of the FMLA.

183.    No adequate or complete remedy at law is available to the Named Plaintiffs or other members of the class to redress the challenged violations of the FMLA.

## COUNT II

### (FMLA Interference)

184.    The Named Plaintiffs hereby incorporate the allegations contained in Paragraphs 1 through 183 of this First Amended Complaint as if they were fully set forth herein.

185.    The Company has adopted and applied a number of policies, practices and procedures which willfully interfere with and deny employees' rights under the FMLA.  As set forth more fully below, the Named Plaintiffs and members of the class have been subjected to one or more of these policies, practices and procedures.  This

interference has resulted in the imposition of sanctions in the form of placement on steps of the ACP, suspensions, and termination.

186.     Upon information and belief, the Company's employees refrain from attempting to exercise or exercising their FMLA rights as a result of their knowledge of the Company's FMLA policies, practices and procedures and the sanctions which result if FMLA leave is denied for an absence.

187.     The Company's policies, practices and procedures detailed below constitute willful unlawful interference with employees' rights in violation of the Family and Medical Leave Act under 29 U.S.C. §2615(a)(1) and 29 C.F.R. §825.220(b).

**The Company's refusal to pre-certify employees' foreseeable absences constitutes unlawful interference with employees' rights under the FMLA.  The Company has subjected Named Plaintiffs and members of the class to this violation of the law**.

188.     Plaintiff Nuss was absent from work on March 12, March 28, and March 29, 2007 in order to care for her mother who suffered from various medical conditions.

189.     Before March 2007, Plaintiff Nuss foresaw that she would need leave to care for her mother.  Plaintiff Nuss, therefore, submitted a medical certification to ARC on February 6, 2007 requesting intermittent leave to care for her mother.

190.     The Company denied Plaintiff Nuss' application for FMLA leave and informed her that FMLA certification forms would only be processed if a corresponding absence has already begun and been reported in the AMTS .

**The Company's rejection of FMLA certifications when the untimeliness or nonreceipt of the submission is not the employee's fault constitutes unlawful interference with employees' rights under the FMLA.  The Company has subjected Named Plaintiffs and members of the class to this violation of the law.**

191.    Plaintiff Abbatiello was unable to work from December 26 through December 29, 2006, due to an injury to his right foot and ankle.  This absence qualified as a serious health condition since he was incapacitated for more than three consecutive days and was under the continuing care of a health care provider.

192.    Plaintiff Abbatiello submitted an FMLA medical certification to ARC on January 22, 2007.  ARC denied the certification request as incomplete on February 9, 2007.  ARC gave him until February 23, 2007 to request administrative review.

193.    When Plaintiff Abbatiello contacted his HCP's office after the denial, he learned the office was closed for vacation until February 27, 2007.

194.    Plaintiff Abbatiello contacted ARC on or about February 21, 2007, explained his circumstances and requested an extension until February 28, 2007 to submit his amended certification form.  Plaintiff spoke to two customer service representatives at ARC and was advised to write a brief letter explaining the situation and to include the doctor's telephone number.

195.    On February 21, 2007, Plaintiff Abbatiello submitted a letter consistent with the advice he received from the ARC representatives.  On February 28, 2007, Plaintiff Abbatiello's doctor made the necessary corrections to the certification form and the completed form was faxed to ARC.

196.    ARC upheld the FMLA leave denial on March 26, 2007 on the grounds that the request for administrative review and revised certification form were untimely.

197.    The denial of FMLA coverage resulted in a chargeable absence under the ACP which the Company used to place Plaintiff Abbatiello on Step One.

198.   On May 1, 2009, Plaintiff Cabrera was placed on Step One of the ACP and was advised that if his next chargeable absence before October 29, 2009 was greater than three days he could be advanced directly to Step Three.

199.   Plaintiff Cabrera was absent from May 26, 2009 to May 29, 2009 due to his own illness.  Plaintiff Cabrera's illness qualified as a serious health condition in that he was incapacitated for more than three consecutive days and was under the care and continuing treatment of a HCP.

200.   On June 12, 2009, Plaintiff Cabrera requested  FMLA leave and submitted medical information.  Due to a mistake the dates listed on the certification form, June 2, 2009 to June 5, 2009, were incorrect.

201.   The Company denied Plaintiff Cabrera FMLA on June 22, 2009 on the grounds that the certification form was not received by ARC. Plaintiff Cabrera was not advised that ARC received a certification form with incorrect absence dates.

202.   Plaintiff Cabrera requested an administrative review on June 23, 2009 and resubmitted the same certification form along with a copy of his fax transmittal showing he faxed the forms timely.  On July 1, 2009, ARC sustained the denial because his certification form was not submitted within 25 days of the first day absent.

203.   The denial of Plaintiff Cabrera's FMLA leave was counted against him on the ACP.  Plaintiff Cabrera was placed on Step Three and was given a five day letter in lieu of suspension.

204.   Plaintiff Cornielle was absent from June 25 through June 27, 2007 due to the need to care for her son who suffered from a serious health condition under the

FMLA.  On July 17, 2007, Plaintiff Cornielle requested FMLA leave to cover that absence and submitted a medical certification.

205.    Plaintiff Cornielle's request for FMLA leave was denied on July 23, 2007 on the grounds that the certification form was not received by ARC.  On August 6, 2007, Plaintiff requested administrative review.

206.    Plaintiff Cornielle resubmitted her certification form along with a copy of the fax transmission showing the original timely submission of her certification form.

207.    On August 9, 2007, Plaintiff Cornielle's supervisor advised her the absence remained denied on the grounds that ARC had not received the certification form.

208.    On August 14, 2007, Plaintiff Cornielle resubmitted her certification form, proof of the timeliness of her original request for FMLA leave, and proof of her timely submission of her request for administrative review.

209.    On September 19, 2007, the Company acknowledged receipt of the August 14, 2007 request for administrative review.  Nevertheless, the Company denied administrative review on the grounds that the request was made outside of the administrative review period.

210.    As a result of the denial of FMLA leave, the Company counted Plaintiff Cornielle's absence against her under the ACP and then placed her on Step Four on September 5, 2007 with an unpaid suspension.

211.    Plaintiff Dunn was absent due to a serious health condition from June 25, through June 28, 2007.  Plaintiff Dunn requested FMLA leave for this absence and submitted the required medical certification form.

212.   On July 23, 2007, The Company denied Dunn's request for FMLA coverage on the grounds that his certification form was not submitted within the required time frame.  Plaintiff Dunn called ARC and explained that the forms were late because his HCP had been away on vacation.

213.   ARC advised Plaintiff Dunn to submit a letter explaining this.  He submitted a request for administrative review on July 24, 2007. ARC upheld the denial of Plaintiff Dunn's FMLA leave on August 21, 2007.

214.   As a result of this denial of FMLA leave, Plaintiff Dunn's absence was made chargeable.  The Company used this absence to advance Plaintiff Dunn to Step Four of the ACP with a 15-day suspension on August 21, 2007.

215.   Plaintiff Fountain was granted intermittent FMLA leave from August 26, 2006 until August 28, 2007 for her chronic serious health condition of sinusitis.  That intermittent leave was for five times per month, one day for each episode.

216.   Plaintiff Fountain was absent on May 30, 2007 and May 31, 2007 due to her sinusitis.  ARC sent her a recertification form, because she had exceeded her certification for intermittent FMLA leave.

217.   The HCP erroneously submitted the recertification form to MetLife.

218.   The Company denied plaintiff FMLA coverage on the grounds the recertification form was not received by ARC.  Plaintiff Fountain requested administrative review on July 2, 2007 and explained why her certification was late.  The absence remained denied.

219.     The denial made the absence chargeable under the ACP.  The Company advanced Plaintiff Fountain to Step Three of the Absence Control Plan on August 6, 2007 with a ten-day suspension due to that chargeable absence.

220.     Plaintiff Melendez was absent from December 26, 2007 to December 31, 2007 due an upper respiratory infection.  Plaintiff Melendez's illness qualified as a serious health condition in that he was unable to work for more than three consecutive days and was under the care and continuing treatment of an HCP.

221.     The deadline for submitting medical information to ARC for his absence was January 20, 2008.  Plaintiff Melendez brought the FMLA certification form to his HCP's office to be completed and was advised that he had to schedule an appointment to have the forms completed.  The first available appointment was January 22, 2008.

222.     Plaintiff Melendez, aware that he was going to miss the deadline, contacted ARC concerning his absence.  Plaintiff Melendez was advised that he would have to file an appeal.

223.     On January 24, 2008, Plaintiff Melendez submitted a written request for an administrative review explaining the reason for the delay.  On February 27, 2008 ARC denied his administrative review request because the certification form was not submitted timely.

224.     As a result of this denial Plaintiff Melendez incurred a chargeable absence.  The Company placed Plaintiff Melendez on Step Four of the ACP with a 20-day suspension.

225.     Plaintiff Reinheimer suffers from chronic severe allergies and asthma due to environmental irritants.  This chronic condition qualifies as a serious health condition

41

covered by FMLA insofar as it requires continuing care and treatment by a health care provider and periodically renders the plaintiff unable to work.

226.    Plaintiff Reinheimer's chronic condition caused her to be absent from work and unable to perform her regular job duties from March 13 until March 16, 2007. Plaintiff Reinheimer requested FMLA leave for this absence and submitted medical certification.  On May 4, 2007, the Company approved FMLA leave for the March 13 – March 16, 2007 absence.

227.    Plaintiff Reinheimer's medical certification indicated she would need intermittent leave three times per week with each absence lasting three days for a period of twelve months.  The certification form was given to ARC's physician advisor so that the advisor could contact Plaintiff's HCP concerning the intermittent leave request.

228.    Plaintiff Reinheimer incurred another absence on April 4, 2007 due to her chronic serious health condition.  She submitted a certification form for this absence which was denied on April 30, 2007.

229.    The Company's basis for this denial was a claim that ARC did not receive the certification form.

230.    On May 4, 2007, Plaintiff Reinheimer requested administrative review of the denial of her April 4 leave and resubmitted her medical certification information.  Her request for administrative review also included a copy of her original April 4 absence certification form with the submission date stamped on the top.  In addition, Plaintiff Reinheimer noted that her HCP's office faxed the same information on April 12, 2007.

231.    Despite this proof, ARC upheld the denial.  The reason given for this denial of administrative review was that Plaintiff Reinheimer included neither a note from the HCP nor a copy of the fax transmittal.

232.    Plaintiff Reinheimer also accrued absences on April 25 and 26, 2007 and from May 2 to May 4, 2007 due to the same condition that caused her April 4, 2007 absence.

233.    Plaintiff Reinheimer's request for FMLA leave was denied.  The reason given for this denial was that the certification form was not received on time.  Plaintiff submitted a letter from her HCP indicating that it was the HCP's fault that the certification form was submitted late.  ARC refused to accept the letter from the health care provider.  Plaintiff's request for FMLA leave remained denied.

234.    The Company's denials resulted in Plaintiff Reinheimer being sanctioned twice.  The Company placed her on Step One under the ACP on June 6, 2007 for the April absences.  Then, on June 13, 2007, the Company advanced Plaintiff Reinheimer to Step Two for the May 2 absence.

235.    Plaintiff Smith requested FMLA leave on September 6, 2007 for an absence due to her husband's emergency hospitalization.  This absence qualified under the FMLA because it was caused by the need to care for a spouse with a serious health condition.

236.    On October 2, 2007, the Company denied Plaintiff Smith's FMLA leave request on the grounds that the certification form was not received.

237.    The certification form was one day late because plaintiff had difficulty getting the treating physician in the emergency room to fill out the forms.  This doctor

initially refused to fill out the certification.  Plaintiff Smith returned to the emergency

room again and succeeded in getting the emergency room doctor to fill out the forms

but not before the Company's 25-day deadline expired.

238.   Following her supervisor's advice, Plaintiff Smith wrote a letter to ARC on

October 9, 2007, explaining why her paperwork was late.  ARC acknowledged the letter,

but upheld the denial.

239.   Plaintiff Smith sought administrative review, but the Company denied

Plaintiff Smith's request for FMLA administrative review.  The reason given for this

denial was that the certification submission was late.

240.   The result of this denial of FMLA leave was a chargeable absence under

the ACP which the Company used to advance Plaintiff Smith to Step Three with a 20-

day suspension.

241.   Plaintiff Spinale's chronic depression and anxiety rendered him unable to

perform his regular job duties on August 28 through August 31, 2007.  Plaintiff Spinale's

condition qualified as a chronic serious health condition covered by the FMLA insofar as

Plaintiff was under the care and continuing treatment of a health care provider.

242.   Plaintiff Spinale's HCP submitted a timely certification for FMLA leave to

the Company on September, 21, 2007. On September 24, 2007, ARC denied Plaintiff

Spinale's FMLA on the grounds that the certification was not received.

243.   The Company's erroneous rejection of Plaintiff Spinale's certification as

untimely resulted in a chargeable absence which the Company used on October 16,

2007 to advance Plaintiff Spinale to Step Four with a ten-day suspension.

244.    Plaintiff Terrell was unable to work from May 2, 2007 through May 16, 2007 due to a combination of three medical conditions.  This absence qualified as a serious health condition since Plaintiff was incapacitated for more than three consecutive days and was under the continuing care of a health care provider.

245.    Plaintiff Terrell sought FMLA leave.  The 25 days for submitting her medical certification expired on Sunday, May 27, 2007.  The following day, May 28, 2007, was Memorial Day.  Plaintiff Terrell's HCP submitted the certification to ARC via fax on Tuesday, May 29, 2007.

246.    ARC denied the certification request on the grounds that it was untimely. Plaintiff Terrell requested an administrative review and wrote a letter explaining the circumstances of the delay.  ARC upheld the denial of FMLA leave on the grounds that the certification had been untimely submitted.

247.    The denial of FMLA coverage resulted in a chargeable absence under the ACP which the Company used to place Plaintiff Terrell on Step Four with a ten-day suspension.

248.    Plaintiff Watson suffered an on-the-job injury on July 28, 2008.  He was absent due to the injury, lumbar strain with severe pain, from September 2 through September 5, 2008.  Plaintiff Watson's condition qualified as a serious health condition under the FMLA, because he was unable to work for more than three days and was under the care and continuing treatment of an HCP.

249.    Plaintiff Watson had his HCP submit a certification form for the absence. The HCP made some mistakes in filling out the form.  Additionally, the HCP faxed the certification form to the Worker's Compensation vendor on September 26, 2008,

45

because there was no fax number on the form.  The Worker's Compensation vendor did not forward the forms to ARC.

250.    The Company denied Plaintiff Watson FMLA coverage on the grounds that the certification was not received.

251.    Plaintiff Watson requested administrative review on October 9, 2008. Plaintiff Watson explained the faxing error and included a letter from his HCP stating that the form was faxed to Workers' Compensation because there was no fax number on the form.

252.    Plaintiff Watson's absence remained denied for nonreceipt.

253.    Plaintiff Watson contacted a Healthcare Benefits Coordinator ("HCBC"). An HCBC is a union representative whose function is to assist CWA bargaining unit employees who are having difficulties with the Company with respect to benefits and FMLA leave issues.

254.    The HCBC contacted an ARC representative and explained the error and acknowledged that the certification forms originally submitted were incomplete.  The HCBC argued that the forms were timely submitted and that Watson should be given the opportunity to request administrative review.

255.    The request for administrative review was denied.  ARC's representative advised the HCBC that the letter from the plaintiff's HCP was not acceptable because it did not state that they attempted to fax the FMLA certification form to ARC and therefore the denial was upheld.

256.    The denial of FMLA leave made the absence chargeable under the ACP. Due to this chargeable absence, the Company placed Plaintiff Watson on Step Three with a ten-day suspension.

257.    Plaintiff Whigham suffers from chronic asthma and had a certification on file for intermittent leave for her condition. On August 22, 2007, the chronic serious health condition caused Plaintiff Whigham to be absent.  That one absence exceeded the amount of intermittent leave authorized by her certification.

258.    ARC required Plaintiff Whigham, therefore, to submit a recertification form for the August 22, 2007 absence. Plaintiff Whigham's certification was due on or before September 14, 2007.  On September 14, 2007, Plaintiff Whigham submitted a recertification form completed by her HCP on September 13, 2007.

259.    ARC denied Plaintiff Whigham's FMLA leave request on the grounds that the FMLA recertification was not received on time.

260.    On September 24, 2007, Plaintiff Whigham requested administrative review and provided a copy of the timely, successful fax transmittal of her recertification. Nevertheless, ARC upheld the denial of Plaintiff Whigham's FMLA leave request on the basis that the form was untimely.

261.    Plaintiff Whigham sought help from her HCBC who contacted ARC.  An ARC representative told the HCBC that Plaintiff Whigham's fax transmittal was disregarded because the HCP dated the form September 19, 2007.  ARC did not contact the HCP to clarify the date.

262.    The denial resulted in a chargeable absence under the ACP which the Company used to place Plaintiff Whigham on Step One.

**The Company's refusal to review valid certifications or grant FMLA leave when supervisors have inaccurately recorded employees' absences constitutes unlawful interference with employees' rights under the FMLA.   The Company has subjected Named Plaintiffs and members of the class to this violation of law.**

263.    Plaintiff Henderson was out on approved disability leave from February 26, 2007 to March 13, 2007 due to a sprained ankle and gout.  She also had FMLA-approval for scheduled multiple treatments from March 12, 2007 to March 20, 2007.

264.    Plaintiff Henderson returned to work on March 15, 2007, but relapsed on March 19, 2007.  Plaintiff Henderson's supervisor erroneously reported her relapse as a new occurrence.  The supervisor's error caused ARC to make a new eligibility determination which resulted in a denial of FMLA protection to Plaintiff Henderson for the relapse on the grounds of insufficient hours worked.

265.    The denial of FMLA leave for the relapse made that absence chargeable under the ACP and resulted in the Company placing Plaintiff Henderson on Step Three with a five-day suspension.

266.    Plaintiff Peay suffers from the serious chronic health conditions of diabetes, hypertension and cardiomyopathy.  Due to flare ups of these conditions, Plaintiff was unable to complete his regular job duties beginning on March 6 through March 16, 2007   His condition qualified as a chronic serious health care condition covered by the FMLA since he was under the continuing care and treatment of an HCP.

267.    Plaintiff Peay requested FMLA leave for his absence from the Company and submitted a certification form.  On April 6, 2007, Plaintiff Peay was FMLA-approved from March 6 until March 15, 2007. He was also approved for intermittent leave once a year for one day.  The certification form also indicated that Plaintiff Peay would need bi-monthly office visits and testing.

268.    For unknown reasons, Plaintiff Peay's supervisor changed his first day absent in the AMTS system from March 6 to March 7, 2007.  That change resulted in the creation of a new absence for Plaintiff Peay even though his leave time was continuous and fell inside an FMLA approved time period.

269.    On April 3, 2007, FMLA coverage was denied for the March 7 absence on the grounds that a certification form was not received.  Plaintiff Peay requested an administrative review on April 16, 2007, but the denial was upheld on the grounds the certification was not received by the deadline.

270.    Plaintiff Peay was initially placed on Step Three and suspended five days due to the denial of his absence for non-receipt of the certification.  Peay was later advised that because he exceeded his FMLA leave time by one day he was advanced to Step Three.

271.    Plaintiff Prock's stress and anxiety condition rendered her unable to perform her regular duties several times between January 22, 2007 and March 16, 2007.  Her condition qualified as a serious health condition under the FMLA, because she was unable to work for more than three days and was under the care and continuing treatment of a health care provider. Plaintiff Prock was granted both FMLA leave and disability leave.

272.    Plaintiff Prock suffered a relapse which caused her to be absent on March 26 and 27, 2007.  Despite supervisors' knowledge of Ms. Prock's health condition, her condition was reported to ARC as "new."

273.    This incorrect reporting led ARC to evaluate Plaintiff Prock's eligibility for FMLA leave for March 26 and 27, 2007.  Plaintiff Prock was denied FMLA leave

coverage for that absence on the grounds she did not have enough hours worked to qualify.

274.    On April 16, 2007, the Company suspended Plaintiff Prock for ten days pending termination due to this denial of FMLA leave coverage.  Instead of being returned to work, the Company terminated Plaintiff Prock.

**The Company's delay in approving and/or denying FMLA leave due to the Company's misapplication of the physician review process constitutes unlawful interference with employees' rights under the FMLA.   The Company has subjected Named Plaintiffs and members of the class to this violation of law.**

275.    Plaintiff Greene was unable to perform her regular job duties on June 6, 8, 25 and July 13, 2007 due to chronic depression, anxiety and insomnia.  These absences qualified as a chronic serious health condition insofar as plaintiff was under the care and continuing treatment of an HCP.

276.     The Company had previously granted Plaintiff Greene FMLA coverage for this chronic serious health condition.  Plaintiff Greene's FMLA certification for previous absences for the condition  expired prior to the June 6 absence.

277.    On June 27, 2007, Plaintiff Greene requested FMLA leave for her absence on June 6, 2007.  The certification submitted as part of that request indicated that Plaintiff would require twelve months of intermittent leave, three times per month, two days per incident.

278.    The Company denied Plaintiff Greene's submitted certification on or about July 25, 2007 on the grounds that it was incomplete.  Plaintiff submitted a corrected certification on August 7, 2007 which ARC placed under physician review.

279.    Plaintiff Greene informed her supervisor that the June 8, 25 and July 13 absences were related to her ongoing condition which had caused the June 6 absence.

280.    Plaintiff Greene's supervisor submitted incorrect information to ARC about two of the three subsequent absences.  The supervisor reported the June 8 and 25 absences as "new" and unrelated to the June 6 absence.  The supervisor correctly reported the July 13 absence as related to the June 6 absence.

281.    On July 5 and July 23, 2007, the June 8 and 25 absences were denied for lack of certification.  Plaintiff Greene did not submit certification forms for the June 8 and 25 absences, because she thought  these absences would be covered by the June 27, 2007 submission  which had requested intermittent leave since the two absences were related to her ongoing chronic condition.

282.    Plaintiff Greene requested administrative review of the two denials on July 8 and July 25, 2007,  explaining that her absences were related to her June 6 absence. She resubmitted copies of the certification that she had previously provided.

283.    The June 8 and June 25, 2007 absences remained denied.  The continued denial was based on untimeliness.  Since the supervisor incorrectly reported these subsequent and related absences to ARC as "new," the certifications were deemed late.

284.    Despite the supervisor's accurate reporting of the July 13 absence as related to Plaintiff Greene's  June 6 absence, FMLA coverage was denied on the grounds that she did not submit a separate certification for the July 13 absence.

285.    Plaintiff Greene requested administrative review, but did not respond to ARC's charge that the original certifications were late. ARC maintained its denial of Plaintiff Greene's FMLA leave.

286.    The letter informing Plaintiff Greene of the continued denial of FMLA coverage for the July 13 absence arrived in the same envelope on September 7, 2007 as the letter approving FMLA leave for the related June 6 absence and her request for intermittent FMLA leave.

287.    Even after the intermittent leave request was approved, the June 8 and 25 absences remained denied.

288.    The Company's delay through using physician review in processing  the certifications submitted in connection with the June 6, 2007 absence led to the denial of FMLA leave coverage for the subsequent related absences on June 8, June 25 and July 13, 2007.  As a result of this denial of FMLA leave, Plaintiff Greene's absences were counted against her under the ACP and she was placed on Step One.

289.    As previously alleged in Paragraph , Plaintiff Reinheimer's  certification indicated that she would need intermittent leave for her chronic serious health condition. The certification form was given to ARC's physician advisor so the advisor could contact Plaintiff Reinheimer's HCP regarding the portion of the request seeking intermittent leave.

290.    The Company denied that portion of Plaintiff Reinheimer's intermittent leave request on May 4, 2007, despite approving FMLA leave for the March 13 – March 16, 2007 absence, on the grounds that ARC was unable to clarify the intermittent leave need indicated by Plaintiff Reinheimer's HCP.

291.    As previously alleged in Paragraph , Plaintiff Reinheimer experienced periods of absence subsequent to March 13 to 16 related to the same chronic serious health condition.

292.   The Company's denial of intermittent FMLA leave to Plaintiff Reinheimer led to the April and May 2007 absences she incurred due to her chronic serious health condition being counted against her under the ACP.

293.   The Company, as alleged in Paragraph , placed her on Step One and then Step Two for those absences.

**The Company's failure to promptly review and approve valid FMLA certifications constitutes unlawful interference with employees' rights under the FMLA. Defendants have subjected Named Plaintiffs and members of the class to this violation of law.**

294.   Plaintiff Fountain suffers from chronic sinusitis.  The Company granted her intermittent FMLA leave from August 26, 2006 until August 28, 2007 for this chronic serious health condition.  That intermittent leave was for five times per month, one day for each episode.

295.   Due to her chronic sinusitis, Plaintiff Fountain was absent on February 27, 2007.  Plaintiff Fountain submitted a certification for this absence on March 14, 2007. The HCP increased the duration of intermittent leave on this form to five times per month, one to five days per episode, for a period of twelve months, from February 15, 2007 until February 15, 2008.

296.   The Company approved FMLA leave for February 27, 2007 under the previously approved certification.

297.   ARC did not, however, process Plaintiff Fountain's amended intermittent leave request.  Instead, ARC returned Plaintiff Fountain's intermittent leave request because ARC claimed that the certification did not correspond to an absence in the AMTS.  ARC applied the date of the filing as the absence date, February 15, 2007, because this was the first day indicated by the HCP on the certification.

298.     Plaintiff Fountain's chronic sinusitis caused her to be absent again on March 6 and 7, 2007.  FMLA leave was approved for March 6 but not for March 7, 2007. The company sent plaintiff a recertification form since the March 7, 2007 absence exceeded the duration of her previously-approved certification.

299.     Plaintiff Fountain did not submit a recertification form for March 7, because she had already submitted a certification form on March 14, 2007 in which her HCP indicated the changes sought to Plaintiff Fountain's intermittent leave certification. The Company denied FMLA leave for March 7 on the grounds that a certification was not submitted.

300.     The denial of FMLA leave made the March 7 absence chargeable under the ACP.  The Company placed Plaintiff Fountain on Step Two on May 2, 2007 due to this absence.

301.     Plaintiff Martini was granted FMLA leave for an absence she incurred on November 21, 2006 while caring for her husband who had been injured in a motor vehicle accident.  The FMLA leave for that absence was approved on December 26, 2006.  Plaintiff Martini was also approved for intermittent leave once a week, two hours per episode, for a period of one month.

302.     Plaintiff Martini had subsequent, related absences on November 30, December 4 and December 12, 2006 to care for her husband who was recovering and attending physical therapy.  Plaintiff Martini was absent from work for eight hours each of these days.  Two hours of each absence were approved based on the existing, approved intermittent leave.

303.   The Company notified Plaintiff Martini on January 26, 2007 that she would need to submit a separate recertification form for each six hour absence/period not covered by her FMLA certification.

304.   At Plaintiff Martini's request, her husband's HCP completed a new certification for each of the dates at issue.  On these forms, the HCP increased the duration of each of Plaintiff Martini's absences to a full day. The HCP also increased the duration of necessary leave time to extend from November 21, 2006 until May 20, 2007.

305.   Plaintiff Martini submitted a new certification form on January 2, 2007 for the December 22, 2006 absence.  After submission, she learned that information was missing from the form.  On January 31, 2007, Plaintiff Martini requested administrative review.  Plaintiff's amended certification form included all the dates of her husband's medical appointments from November 30, 2006 through December 22, 2006, and further extended her request for intermittent leave to care for her husband from November 20, 2006 through May 20, 2007.

306.   On February 23 and 26, 2007, the Company deemed the recertification forms submitted for November 30, December 4 and December 12, 2007 incomplete. The Company denied the requested FMLA leave.

307.    Plaintiff enlisted the help of her HCBC.  On March 6, 2007, an ARC representative told the HCBC that the HCP failed to specify that Plaintiff Martini needed 8 hours of leave for November 30, December 4 and December 12, 2006.  The representative also advised Plaintiff Martini's HCBC that the one page recertification forms completed by the HCP were the wrong forms to use to amend an existing certification.

308.    In March 2007, the Company granted FMLA leave coverage for November 30, December 4 and December 12, 2006.  On March 7, 2007, ARC denied FMLA leave for the December 22, 2006 absence.

309.    The reason given for the denial was that the administrative review request was untimely.  Plaintiff Martini again contacted her HCBC who escalated the case to the FMLA administrator at ARC.  On March 15, 2007, the ARC administrator acknowledged that the certification was timely and stated that Plaintiff Martini should have been denied because the certification form was incomplete.  Plaintiff Martini was allowed to apply for administrative review a second time.  Administrative review was denied.

310.    The result of the denial of FMLA leave for December 22, 2006 was a chargeable absence under the ACP.  Due to that absence, the Company disciplined Plaintiff Martini under the ACP and placed her on Step One.

311.    On May 31, 2007, Plaintiff Treadway took time off to care for his father who suffered from a chronic health condition which required the continuing care of an HCP.  Plaintiff Treadway requested FMLA leave and submitted a certification to cover that absence.

312.    Plaintiff Treadway was also absent on June 5, June 13, June 15, and June 27, 2007 to care for his father.  Plaintiff Treadway reported each of these absences as related to his May 31 absence, but he did not submit an FMLA certification showing a need for intermittent leave or a new certification for each of the June absences.

313.    Plaintiff Treadway believed his June absences would be covered by the certification submitted in connection with the May 31, 2007 absence since they were subsequent and related.

314.    On July 7, 2007, Plaintiff Treadway's May 31, 2007 leave certification was denied.  FMLA coverage was also denied for the June absences on the grounds that ARC did not receive certification for those absences.

315.    Plaintiff Treadway requested administrative review of the denial of coverage for his May 31, 2007 absence.  FMLA leave was approved on August 16, 2007 for the May 31, 2007 absence, and intermittent FMLA leave was granted for the period of May 31, 2007 through November 30, 2007 with a frequency of five times per month lasting eight hours per episode.

316.    Even though the initial leave was approved and intermittent leave was ultimately granted, the Company did not change its records to treat the June absences as FMLA-protected.

317.    The demonstrated failure to promptly review and approve Plaintiff Treadway's FMLA certification, which sought intermittent leave, caused the June absences to be counted against him under the ACP.  The Company placed Plaintiff Treadway on Step Four on July 20, 2007 with a 10-day suspension, due in part to the June 5 denial.  The treatment of the remaining absences as chargeable under the ACP caused the Company to place Plaintiff Treadway on Step Five with a 20-day suspension.

318.    The ultimate result was Plaintiff Treadway's termination on January 1, 2008.  He had incurred additional absences which caused him to fall below the 1250 hour eligibility requirement.  If the Company had handled Plaintiff Treadway's  June absences as related, he would not have been terminated.

**The Company's failure to provide employees with correct and complete information regarding their rejected certifications constitutes unlawful**

**interference with employees' rights under the FMLA.   The Company has subjected Named Plaintiffs and members of the class to this violation of law.**

319.    As alleged in Paragraphs  through , Plaintiff Abbatiello contacted ARC when he became aware that his HCP would not be available to correct the FMLA medical certification form within the Company's timelines for requesting administrative review.

320.    On or about February 21, 2007, Plaintiff Abbatiello spoke to two ARC customer service representatives who advised him to write a brief letter explaining the situation and to include the doctor's telephone number.  Plaintiff Abbatiello followed ARC's advice and submitted the letter on February 21.

321.    On February 28, 2007, Plaintiff Abbatiello's doctor made the necessary corrections and the completed form was faxed to ARC.

322.    Even though Plaintiff Abbatiello followed the advice of ARC representatives, ARC still denied the request for administrative review and the revised certification as untimely.

323.    As alleged in Paragraph , the denial of FMLA leave time resulted in a chargeable absence under the ACP which caused Plaintiff Abbatiello to be placed on Step One.

324.    Plaintiff Frater was absent from work and unable to perform his regular job duties from June 26 through June 29, 2007 due to severe migraines.  This absence qualified as a serious health condition under the FMLA insofar as Plaintiff Frater was unable to work for more than three days and was under the care and continuing treatment of an HCP.

325.   On July 18, 2007, Plaintiff Frater requested FMLA leave from the Company and submitted a medical certification form.  The Company returned the certification unreviewed and unprocessed.  The reason given was that there was no corresponding absence in the AMTS.

326.   The date on the fax cover sheet submitting the certification form indicated Plaintiff Frater's first day absent as June 24, 2007.  The first date of Frater's absence recorded in the AMTS was June 26, 2007.

327.   Plaintiff Frater called ARC and explained that the date on the fax cover sheet was a typo.  He was instructed to resubmit his form with a note indicating that there was a typo on the original fax cover sheet.  Plaintiff Frater did as ARC instructed, i.e., noted the typo and resubmitted the form on August 2, 2007.

328.   Plaintiff Frater's request for FMLA certification was denied on the grounds that he failed to write that it was a request was for administrative review on the resubmitted certification form.

329.   The ARC representative had not told Plaintiff Frater that he needed to specifically request administrative review in writing on the cover page of his submission.

330.   The denial of FMLA leave was counted against Plaintiff Frater under the ACP and the Company placed him on Step Three with a five day suspension.  Subsequently, Plaintiff Frater incurred another chargeable absence at which time the Company terminated his employment.

331.   Plaintiff Lopez was absent from work on Monday, July 9, 2007, and Tuesday, July 10, 2007, due to severe pain and swollen legs.  This condition began the previous week while Plaintiff Lopez was on vacation and incapacitated her the weekend

before July 9.  This condition qualified as a serious health condition covered by the

FMLA insofar as Plaintiff Lopez was incapacitated for more than three days and was

under the care and continuing treatment of a health care provider.

332.    Plaintiff Lopez requested FMLA leave from the Company and submitted

medical certification documentation.  On July 26, 2007, the Company denied Plaintiff

Lopez's request for FMLA on the grounds that the certification did not establish a

serious health condition.

333.    Plaintiff Lopez called ARC several times in order to find out what was

missing from her certification form.  At no time during these contacts did ARC tell

Plaintiff Lopez that her HCP had indicated only two days of incapacity on the

certification form.  ARC only told Plaintiff Lopez that more supporting documentation

was needed.

334.    Plaintiff Lopez sought administrative review, but her request for FMLA

remained denied.

335.    The denial of FMLA leave caused the absence to be chargeable under the

ACP, and the Company disciplined Plaintiff Lopez her by placing her on Step Two.

**The Company's denial of valid, timely applications for administrative review on the grounds that an employee failed to specifically request administrative review, or include a signature, constitutes unlawful interference with employees' rights under the FMLA.   The Company has subjected Named Plaintiffs and members of the class to this violation of law.**

336.    Plaintiff Brady was ill from June 6 through June 10, 2008 due to severe

conjunctivitis with vision loss.  This condition caused him to be absent from work on

June 9, 2008 and June 10, 2008.  Plaintiff Brady's condition qualified as a serious

health condition under the FMLA since he was unable to work for more than three days and was under the care and continuing treatment of an HCP.

337.   Plaintiff Brady sought FMLA leave.  Rather than complete the Company's FMLA medical certification form, the HCP completed an "Attending Physician's Statement."  The Attending Physician's Statement contained sufficient information to show that Plaintiff Brady's severe conjunctivitis qualified as a serious health condition under the FMLA.

338.   ARC contended it did not receive the Attending Physician's Statement and denied the FMLA leave request on the grounds of non-receipt.

339.   Plaintiff Brady resubmitted his medical information on July 11, 2008 along with a letter explaining that he did submit a timely certification form, by fax on June 23, 2008.  Plaintiff Brady also provided proof of that submission in the form of a copy of the fax transmittal.

340.   The Company upheld the denial.  Plaintiff Brady was told that his FMLA leave was denied because he did not specifically request administrative review when he resubmitted his forms with proof of fax.  ARC's representative confirmed that all eight pages of Plaintiff Brady's fax were received when resent, but that they were not reviewed because he did not write "administrative review" on the front.

341.   The Company's denial of FMLA leave made the absence chargeable under the ACP.  At that time, Plaintiff Brady was about to retrogress off of Step One. The Company used the chargeable absence to advance Plaintiff Brady to Step Three with a disciplinary letter in lieu of suspension.

342.   Plaintiff Brady enlisted the Union's help and a grievance was filed.  The Union was only successful in getting the step reduced to Step 2.

343.   Plaintiff Dowd was absent from work from February 20, 2007 until February 26, 2007, due to a severe lower back injury.  That condition qualified as a serious health condition under the FMLA since it rendered Plaintiff Dowd unable to perform his usual job duties for more than three days and required him to be under the continuing care and treatment of a health care provider.

344.   On March 6, 2007, Plaintiff Dowd requested FMLA leave from the Company and submitted the required medical certification.  On March 21, 2007, the Company denied Plaintiff Dowd's request for FMLA leave on the grounds the certification form was incomplete.

345.   On April 2, 2007, Plaintiff Dowd submitted a revised certification form. On April 5, 2007, the Company sustained its denial of the request since Plaintiff Dowd did not write on the front of the coversheet that his April 2 submission was for administrative review.

346.   After denying Plaintiff Dowd FMLA leave, the Company treated the absence as chargeable under the ACP and placed Plaintiff Dowd on Step One.

347.   Plaintiff Dunn was absent from December 17 through December 20, 2007 due to  his chronic serious health condition of agoraphobia and a panic disorder. Plaintiff Dunn faxed an FMLA certification form to his HCP on December 26, 2007, requesting that it be completed and returned to him by January 10, 2008.

348.   Plaintiff Dunn's HCP was ill and unable to complete the certification form until January 18, 2008.  The HCP faxed the form to ARC with a note on the cover sheet

apologizing that the forms were late and explaining that she had been out of work due to illness.

349. On January 29, 2008, the Company denied Plaintiff Dunn's FMLA leave on the grounds the forms submitted by the HCP did not include a specific request by Plaintiff Dunn for an administrative review.

350. Plaintiff Dunn contacted ARC concerning the denial and was advised that his request for FMLA leave remained denied because his second submission did not include a request for administrative review.

351. Plaintiff Dunn offered to re-fax his paperwork with a statement requesting an administrative review, and ARC told him that this would not be possible since he had already been denied administrative review.

352. Nevertheless, Plaintiff Dunn resubmitted his paperwork on February 18, 2008 with a note stating that he was requesting administrative review. Once again, the Company upheld the denial. The reason given this time was that the request for administrative review was untimely.

353. Plaintiff Dunn was on Step Four at the time he requested FMLA leave for the December absence. The denial of the FMLA leave for that absence made the absence chargeable and the Company terminated Plaintiff Dunn on March 12, 2008.

354. As alleged in Paragraphs  through , Plaintiff Frater sought and was denied FMLA leave for an absence from June 26, 2007 caused by a serious health condition. A typo on the fax coversheet caused the Company to return Plaintiff Frater's certification form unreviewed.

355.    Plaintiff Frater called ARC to explain and was told to submit the form again with a note about the typo.  Plaintiff Frater resubmitted the certification form on August 2, 2007.

356.    The Company then denied Plaintiff Frater's request for FMLA certification on the grounds he did not write on the resubmitted certification form that the submission was a request for administrative review.

357.    As alleged in Paragraph , the denial of  FMLA leave was counted against Plaintiff  Frater under the ACP and the Company  placed him on Step Three with a five day suspension.  Subsequently, Plaintiff Frater incurred another chargeable absence at which time the Company terminated his employment.

358.    Plaintiff Fritchy suffers from chronic migraines.  Plaintiff requested and was approved for intermittent leave for her chronic condition from September 5, 2006 to September 4, 2007 for three times per week, one day per episode.

359.    Plaintiff Fritchy was absent due to a severe migraine from July 30, 2007 to August 4, 2007.  For some reason this absence was not reported to ARC as related to her chronic health condition.

360.    Plaintiff Fritchy requested FMLA leave and submitted medical certification information.  On September 11, 2007, the Company denied her request for FMLA leave on the grounds that the certification form was incomplete.

361.    Plaintiff Fritchy submitted a corrected certification form.  The Company upheld the denial of FMLA leave on September 25, 2007 on the grounds that Plaintiff Fritchy did not include a specific request for an administrative review.

362.    The denial of FMLA leave was counted against Plaintiff Fritchy on the ACP and the Company placed her on a short suspension step and suspended her for two days, one hour and five minutes.

363.    Plaintiff Henderson was absent from work and unable to perform her regular job on December 19, 2006.  Plaintiff Henderson suffered from several chronic health conditions including diabetes, hypertension, fibromyalgia, and irritable bowel syndrome.  This absence qualified as a chronic serious health condition covered by the FMLA.

364.    On January 12, 2007, Plaintiff Henderson requested FMLA leave from the Company, and submitted medical certification information, including a request for intermittent leave sufficient to indicate that her leave was covered by the FMLA.

365.    On January 30, 2007, Plaintiff Henderson's certification for FMLA leave was denied on the grounds that the certification form was incomplete.

366.    Plaintiff Henderson submitted a corrected certification form on February 9, 2007.  The Company denied review, however, because Plaintiff Henderson did not include a written request for administrative review on the February 9, 2007 form.

367.    This denial of FMLA leave made the absence chargeable under the ACP and the Company used it to place Plaintiff Henderson on Step Two.

368.    Plaintiff Lee was absent due to her own illness from December 18, 2006 to December 22, 2006.  Plaintiff Lee's illness qualified as a serious health condition in that she was incapacitated for more than three (3) consecutive days and was under the care and continuing treatment of an HCP.

369.     Plaintiff Lee requested FMLA leave and submitted a certification form.  On January 18, 2007 the Company denied FMLA leave on the grounds that the certification form was incomplete.  Plaintiff Lee was given until February 1, 2007 to request an administrative review and submit a corrected certification form.

370.     In response to her denial Plaintiff Lee submitted a revised certification form.  On February 2, 2007, the Company again denied her FMLA leave.  Plaintiff Lee discussed her denial with Force Manager Mercedes Andaluz.  Andaluz called ARC with Plaintiff Lee and was advised that her certification was never reviewed because Plaintiff Lee did not request an appeal.

371.     As a result of the denial Plaintiff Lee was placed on Step One for a period of one year.  Plaintiff Lee subsequently advanced to Step Three due to additional chargeable absences and was suspended for five days.

372.     Plaintiff Leroy was absent from work and unable to perform his regular job duties from December 26, 2007 until January 3, 2007 due to migraines.  This condition qualified as a serious chronic health condition covered by the FMLA because he was unable to work for more than three days and was under the continuing care of an HCP.

373.     Plaintiff Leroy requested FMLA leave and submitted medical certification information.  Plaintiff Leroy's request for FMLA leave was denied on January 22, 2007 on the grounds that the medical certification form was untimely submitted.

374.     On January 27, 2007, Plaintiff Leroy resubmitted his certification form and requested administrative review. He included a typed note requesting administrative review and submitted a note from his HCP dated January 26, 2007, explaining that

Leroy's certification form's untimeliness had been due to an administrative error on the HCP's part.

375.   ARC upheld the denial of Plaintiff Leroy's FMLA certification on the grounds Plaintiff Leroy did not sign the note requesting administrative review.

376.   This denial of FMLA leave caused the absence to be chargeable under the ACP.  The Company placed Plaintiff Leroy on Step One due to this absence.

377.   As alleged in Paragraph , Plaintiff Lopez sought administrative review after the Company denied Plaintiff Lopez's FMLA request.

378.   On July 31, 2007, Plaintiff Lopez's HCP submitted an amended certification form.  The amended form provided additional documentation and requested administrative review for Plaintiff Lopez.  The HCP wrote on the fax cover sheet that Denise Lopez was requesting administrative review.

379.   The Company denied Plaintiff Lopez's request for administrative review on the grounds that Plaintiff Lopez did not request the administrative review herself.

380.   As alleged in Paragraph , the denial of FMLA leave caused the absence to be chargeable under the ACP and the Company disciplined Plaintiff Lopez by placing her on Step Two.

381.   Plaintiff Oakley was unable to perform his duties for the Company for five days, from February 26, 2007 until March 2, 2007, due to severe neck pain with swelling and pain in his hand caused by a serious health condition.  Plaintiff Oakley's condition qualified as a serious health condition under the FMLA because he was unable to work for more than three days and was under the care and continuing treatment of a health care provider.

382.   Plaintiff Oakley requested FMLA coverage and submitted a certification. On April 5, 2007, the Company denied Plaintiff Oakley's request for FMLA leave on the grounds that the certification was incomplete.

383.   Plaintiff Oakley timely submitted an amended certification form on April 16, 2007 for administrative review.  That same day, he called ARC to make sure that his amended form had been received and to confirm that it had been submitted for administrative review.  Plaintiff Oakley was told that his certification had been received and his verbal request for administrative review was sufficient.

384.   The Company denied Plaintiff Oakley's certification for FMLA leave. Plaintiff Oakley did not receive a written denial. Instead, his supervisor told him that FMLA coverage had been denied.

385.   Plaintiff Oakley was told that he did not receive administrative review because he did not request administrative review in writing when he submitted the amended certification form.

386.   The Company's denial of FMLA leave made the absence chargeable under the ACP.  The Company used that chargeable absence to advance Plaintiff Oakley to Step Three on May 7, 2007 with a five day suspension.

387.   Plaintiff Smith was unable to perform her regular job duties from May 31, 2007 until June 3, 2007 due to generalized edema.  Plaintiff's condition qualified as a serious health condition in that she was unable to work for more than three days and was under the care and continuing treatment of an HCP.

388.    Plaintiff Smith requested FMLA leave from the Company and submitted medical certification information.  The FMLA leave request was denied on July 5, 2007 on the grounds that the certification form was incomplete.

389.    Plaintiff Smith requested administrative review on July 19, 2007.  ARC still upheld the denial of FMLA leave.  ARC indicated that there was no proof that Plaintiff Smith herself submitted the request for administrative review because her signature was not on the administrative leave request.  ARC maintained that it appeared the request was made by plaintiff's HCP.

390.    The denial of Plaintiff Smith's FMLA leave request made the absence chargeable under the ACP and the Company placed her on Step One .

391.    Plaintiff Sicuranzo was unable to perform his regular job duties from February 2, 2007 until February 5, 2007, due to severe abdominal pain caused by a serious health condition. Plaintiff Sicuranzo's condition qualified as a serious health condition, because he was incapacitated for more than three days and was under the continuing care and treatment of an HCP.

392.    Plaintiff Sicuranzo requested FMLA leave and submitted an FMLA certification.  His request for FMLA leave was denied on March 13, 2007 on the grounds that the certification was incomplete.  Plaintiff Sicuranzo was given until March 27, 2007 to request administrative review.

393.    Plaintiff Sicuranzo submitted a corrected certification form on March 23, 2007 which ARC refused to review.  ARC refused to review the amended form since Plaintiff Sicuranzo failed to request in writing that he desired an administrative review.

394.   The denial of FMLA leave made the absence chargeable under the ACP. The Company used that absence to place Plaintiff Sicuranzo on Step Three with a five day suspension.

395.   Plaintiff Whitney was absent from work and unable to perform her regular job duties from April 2, 2007 until April 9, 2007 due to a serious health condition. Plaintiff Whitney's absence qualified as a serious health condition under the FMLA because she was unable to work for more than three days and was under the care and continuing treatment of a health care provider.

396.   On May 8, 2007, the Company denied Plaintiff Whitney's request for FMLA leave on the grounds that it was incomplete.  Plaintiff was given until May 22, 2007 to file for administrative review.

397.   Plaintiff Whitney timely submitted the amended certification form to ARC, but her request for FMLA leave remained denied.  The reason given for the denial was that Plaintiff Whitney did not write a note requesting administrative review on the certification form.

398.   The denial of FMLA leave made the absence chargeable under the ACP and the Company placed Plaintiff Whitney on Step One.

**The Company's rejection of valid FMLA certifications if an HCP or HCP's agent did not initial amendments or the agent did not identify his/her relationship to the HCP constitutes unlawful interference with employees' rights under the FMLA. The Company has subjected Named Plaintiffs and members of the class to this violation of law.**

399.   Plaintiff Addeo's severe conjunctivitis rendered him unable to perform his regular job duties from January 24, 2007 until January 30, 2007.  This absence qualified as a serious health condition under the FMLA since Plaintiff Addeo was unable to work

for more than three days and was under the care and continuing treatment of a health care provider.

400.    Plaintiff Addeo requested FMLA leave from the Company on February 1, 2008 and submitted a medical certification.  The Company rejected Plaintiff Addeo's certification on February 16, 2007 on the grounds that the certification form was incomplete.

401.    Plaintiff Addeo requested administrative review and Plaintiff Addeo submitted an amended certification form on February 21, 2007.  This second certification form was denied by the Company on March 27, 2007 on the grounds that Plaintiff Addeo's HCP did not initial the changes made to the corrected certification form.

402.    On March 28, 2007, Plaintiff Addeo's HCP wrote a letter to ARC indicating that he made the changes to the initial certification form and that he signed the form on February 21, 2007.  Even in light of the HCP's letter, the Company maintained its denial.

403.    The Company's denial caused the absence to be treated as chargeable under the ACP and the Company placed Plaintiff Addeo on Step One.

404.    Plaintiff Barry was absent from work from August 24, 2007 until August 28, 2007 due to his need to care for his son who underwent surgery to repair a broken collar bone.  This absence was covered by the FMLA since Plaintiff Barry was caring for an immediate family member with a serious health condition.

405.    Plaintiff Barry requested FMLA leave and submitted a medical certification form.  The Company denied Plaintiff Barry's FMLA leave request on October 5, 2007 on the grounds that there was information missing from the certification.

406.    Plaintiff Barry asked his son's HCP to add the information to the form and he resubmitted the certification on October 15, 2007 with a request for administrative review.

407.    The Company upheld the denial on October 25, 2007 on the grounds that the HCP failed to initial the changes made to the certification form.

408.    Plaintiff Barry obtained the HCP's initials on the form and resubmitted it, but the request remained denied.  According to ARC, only one opportunity for administrative review is allowed.

409.    The Company's denial of FMLA leave made Plaintiff Barry's absence chargeable under the ACP.  The Company used that chargeable absence to place Plaintiff Barry on Step One.

410.    Plaintiff Grzybowski was absent from work from November 6 through November 8, 2007 in order to care for her child, who has a serious health condition. This absence was covered by the FMLA insofar as Plaintiff Grzybowski was caring for an immediate family member with a serious health condition.

411.    Plaintiff Grzybowski requested FMLA leave from the Company and submitted a medical certification form.  On December 5, 2007, the Company denied FMLA leave on the grounds that the certification form was incomplete.

412.    Plaintiff requested administrative review and resubmitted an amended certification form.  On January 17, 2008, ARC upheld the denial of Plaintiff Grzybowski's

FMLA leave on the grounds the certification was incomplete with regard to the frequency and duration of plaintiff's need for leave.

413.    Plaintiff Grzybowski sought help from her HCBC.  The HCBC argued to ARC that plaintiff's certification contained sufficient information to qualify for approval.

414.    The reason given by ARC to the HCBC to explain the administrative review denial was inconsistent with the reason given to Plaintiff Grzybowski. On January 23, 2007, the Company's ARC representative told the HCBC the certification was denied because the HCP did not initial the changes on the amended certification form.

415.    This denial of FMLA leave made the absence chargeable under the ACP. The Company used this chargeable absence to advance Plaintiff Grzybowski to Step Three with a three day suspension.

416.    Plaintiff McCarthy suffers from chronic sinusitis which caused him to be unable to work from June 2 to June 5, 2009.  This absence qualified as a serious chronic health condition under the FMLA.

417.    Plaintiff McCarthy requested FMLA leave and submitted a medical certification filled out by his HCP for FMLA coverage for the June absences, and requested approval for future intermittent leave due to absences related to his chronic condition.  On July 1, 2009, the Company rejected Plaintiff McCarthy's certification on the grounds that the form was incomplete.

418.    Plaintiff McCarthy submitted a corrected certification on July 13, 2009 with a note requesting administrative review.  The corrections were initialed by someone else in the HCP's practice.

419.     The Company upheld its denial of FMLA coverage on July 20, 2009 for the reason that the Company could not confirm if the initialed corrections/additions were made by the HCP's office.  In other words, the person who initialed the changes failed to indicate his/her relationship to the HCP.

420.     The Company's rejection of the corrected certification meant that FMLA coverage was denied and the absence was chargeable under the ACP.  The Company used this chargeable absence to place Plaintiff McCarthy on Step One.

421.     Plaintiff Nuss submitted a certification form for a March 12, 2007 absence when she transported her mother to the hospital.  The Company denied Plaintiff Nuss' certification on April 18, 2007 claiming it was incomplete.

422.     On April 24, 2007, Plaintiff Nuss requested administrative review of this denial and submitted a timely revised certification form.  In a letter dated May 22, 2007, the Company upheld the denial of Plaintiff Nuss' FMLA leave request for March 12, 2007 since the changes on the certification form were not initialed by the HCP.

423.     Plaintiff Nuss left work early on March 28, 2007, and was also absent on March 29 after her mother's HCP called Plaintiff Nuss on March 28 requesting a "Do Not Resuscitate" order.

424.     On April 11, 2007, Plaintiff Nuss submitted a medical certification form to cover this absence.  ARC denied the certification in a letter dated April 26, 2007 claiming that the certification was incomplete.

425.     On May 3, 2007, Plaintiff Nuss requested administrative review of this denial and submitted a revised certification form.  The changes to the form were initialed

by her mother's HCP.  The Company approved Nuss' March 29, 2007 absence in a letter dated June 1, 2007.

426.    After learning of the approval of her request for leave for the March 29 absence, Plaintiff Nuss contacted ARC about whether she could have her mother's doctor initial the changes on the form for the March 12 absence and resubmit it.  ARC informed Plaintiff Nuss that once a request for administrative review is denied a certification form cannot be resubmitted.

427.    As a result of the denial of leave for March 12, Plaintiff Nuss' absence was chargeable under the ACP and the Company placed her on Step One.

428.    Plaintiff Rivera's need to care for her child who had an ongoing chronic serious health condition caused Plaintiff Rivera to be absent on June 29, July 11 and July 23, 2007.  Plaintiff Rivera had previously been granted intermittent leave from March 19, 2007 until May 18, 2007 for the same reason.

429.    Plaintiff Rivera requested FMLA leave to care for her child on June 29, 2007 and submitted medical certification information.  The Company denied this request for FMLA leave on July 25, 2007 on the grounds that the certification form was untimely.

430.    Plaintiff Rivera requested an administrative review and included a note explaining that her form's untimeliness was due to her HCP's unavailability.  ARC upheld the leave denial.

431.    Plaintiff Rivera requested FMLA leave for a two hour absence on July 11, 2007 to care for her daughter.  Plaintiff Rivera submitted the required medical certification form for this absence, but the Company denied Plaintiff Rivera FMLA leave on August 21, 2007 on the grounds that the certification form was incomplete.

432.    Plaintiff Rivera asked her HCP to amend the certification form.  On September 2, 2007, Plaintiff Rivera resubmitted the forms and requested administrative review.

433.    On September 9, 2007, the Company upheld the denial of Plaintiff Rivera's July 11, 2007 absence, with ARC indicating that the HCP did not initial the changes.

434.    Plaintiff Rivera also requested FMLA leave for her 3.5 hour absence on July 23, 2007 to care for her daughter and submitted a medical certification for this absence.  The Company denied this FMLA request on August 28, 2007 on the grounds that the certification form was incomplete.

435.    Plaintiff Rivera had the HCP add the relevant information and on September 11, 2007, resubmitted the certification and requested administrative review.

436.     On October 1, 2007, the Company upheld the denial of FMLA leave for July 23, 2007 on the grounds that the HCP did not initial the changes.

437.    The Company's denials of Plaintiff Rivera's FMLA leave requests made her absences chargeable under the ACP and the Company used those three absences to place Plaintiff Rivera on Step Three on October 10, 2007, with a five day suspension.

438.    Plaintiff Terrell's vertigo condition rendered her unable to perform her usual job duties on March 14 and March 15, 2007.  She was actually incapacitated from March 12, 2007 through March 15, 2007.  Plaintiff's condition qualified as a serious health condition covered by the FMLA because she was unable to work for more than three days and was under the care and continuing treatment of an HCP.

439.   On April 7, 2007, Terrell requested FMLA leave from the Company and submitted medical certification information.  The Company denied Plaintiff Terrell FMLA leave on April 26, 2007 on the grounds that the certification form was incomplete.

440.   On May 10, 2007, Plaintiff Terrell requested administrative review and resubmitted an updated certification form which included the information that ARC said was lacking.  On June 6, 2007, the Company maintained the denial of Terrell's request for FMLA leave since the HCP's initials were not next to the amended information on the resubmitted certification form.

441.   Plaintiff Terrell was subsequently absent for the same condition on March 28 and 29, 2007 and was approved for FMLA leave.

442.   The Company's denial of FMLA leave for the earlier March 2007 absence caused the absence to be chargeable under the ACP and the Company placed Plaintiff Terrell on Step Three with a five day suspension.

**The Company's excessive requests for recertification constitute unlawful interference with employees' rights under the FMLA.   The Company has subjected Named Plaintiffs and members of the class to this violation of law.**

443.   Plaintiff Bradley was FMLA approved for intermittent leave for her chronic serious health condition from April 18, 2007 to April 17, 2008 for once a month, one day per episode.

444.   Plaintiff Bradley was absent due to her chronic health condition from December 10 to December 11, 2007.  The Company approved her absence on December 10, 2007 under her existing certification for intermittent leave. The Company informed Plaintiff Bradley that her absence on December 11, 2007 exceeded the duration of her certification and therefore she had to recertify her absence.  This was

the first time that Plaintiff Bradley had exceeded the duration of her certification. Two months earlier Plaintiff Bradley had exceeded the frequency of her certification on one occasion.

445.   Plaintiff Bradley was denied FMLA because she was unable to submit the recertification form in a timely manner due to her health care provider being unavailable for two weeks due to the holidays.

446.   As a result of her denial Plaintiff Bradley incurred a chargeable absence. The Company advanced Plaintiff Bradley to a short suspension step and she was suspended for two days and three and three-quarter hours.

447.   Plaintiff Bradley had an approved certification for intermittent leave for her chronic health condition valid through April 17, 2008 and should not have been required to recertify her absence.

448.   Plaintiff Holman suffers from chronic migraines. The Company granted Plaintiff Holman intermittent FMLA leave for that serious chronic health condition from March 12, 2007 to March 11, 2008 for once a month, five days per episode.

449.   Plaintiff Holman was absent from work on January 14, 2008 due to his migraine condition. Plaintiff Holman did not submit FMLA certification for this absence since he was already approved for intermittent leave due to migraines.

450.   Despite his FMLA certification, Holman received a letter on February 11, 2008 informing him that he was required to submit a recertification due to a suspicious pattern of absence. The deadline to submit the certification was February 8, 2008. Plaintiff Holman contacted ARC and was told that he was timed out of the opportunity to file an FMLA certification for this absence.

451.    Due to this denial of FMLA leave, the Company assessed a chargeable absence under the ACP and advanced Plaintiff Holman to Step Four with a ten day letter in lieu of suspension.

452.    Plaintiff Holman's chronic serious health condition caused him to be absent again from February 1, 2008 through February 6, 2008.  On February 19, 2008, ARC rescinded Holman's certification for intermittent leave.

453.    Plaintiff Holman was absent again from February 21, 2008 until February 26, 2008, due to his serious chronic condition.  Since his certification had been rescinded, Plaintiff Holman was obligated to submit a new FMLA certification.

454.    Before Plaintiff Holman was able to submit his paperwork, he received a preliminary determination letter informing him that he was not eligible for FMLA leave because he did not have the required 1250 hours available.

455.    Plaintiff Holman was FMLA certified through March 11, 2008 for his serious health condition and, therefore, should not have needed to meet the hours worked requirement or file the extension of his leave as a new absence.

456.    Since FMLA certification/coverage for Plaintiff Holman's February absence was denied, the Company charged Plaintiff Holman with an absence under the ACP and used it to terminate his employment.

457.    Plaintiff Lucas suffers from a chronic serious health condition for which she requested FMLA and received approval for intermittent leave.  Plaintiff Lucas was approved for intermittent leave for once a month, four days per episode from December 20, 2007 to December 19, 2008.

458.   Plaintiff Lucas' chronic health condition caused her to be absent from March 3 to March 7, 2008.  Plaintiff was approved FMLA leave from March 3 to March 6, 2008 under her existing certification for intermittent leave.  On March 24, 2008, ARC advised Plaintiff Lucas that she would need to recertify her absence on March 7, 2008 because she exceeded the duration of her approved leave.

459.   The deadline for submitting her certification form was April 18, 2008. Plaintiff Lucas provided the medical certification to ARC on April 10, 2008.  ARC denied FMLA leave on April 22, 2008 on the grounds that the certification form was incomplete. Her denial letter was mailed to her on April 23, 2008.

460.   Plaintiff Lucas had her HCP make the necessary corrections to the certification form and it was resubmitted to ARC with a notation on the fax cover sheet indicating that this was the corrected version.  On May 7, 2008, ARC sustained the denial of her FMLA leave for her absence because she did not request an administrative review.  Plaintiff contacted ARC about her denial and was advised that the wording on the fax cover sheet was not accepted and that she would have to file a grievance.

461.   On May 8, 2008, the Company advanced Plaintiff Lucas to Step Three of the ACP and suspended her for ten days.

462.   Plaintiff Lucas filed a grievance for her suspension.  During the grievance process the Company denied any violation and informed Plaintiff Lucas that her administrative review request was not received timely.

463.    Plaintiff Lucas had an approved certification for intermittent leave for her chronic health condition valid through December 19, 2008 and should not have been required to recertify her absence.

464.    Plaintiff Middendorf suffers from a chronic serious health condition for which he has been approved for intermittent leave.  His certification authorized the duration of each leave related to his chronic condition to last for two days.

465.    Plaintiff Middendorf requested FMLA leave for an absence related to his chronic health condition from October 6 to October 8, 2007.  Plaintiff was FMLA approved for his absence from October 6 to October 7, 2007.  The Company advised Plaintiff Middendorf that he would need to recertify his absence of October 8, 2007 because he exceeded his two-day intermittent leave period as previously certified.

466.    In compliance with the Company's request Plaintiff Middendorf submitted a timely certification form.  Plaintiff Middendorf's health care provider specified that he would need leave from October 6, 2007 through October 8, 2007.

467.    The Company denied Plaintiff's request for FMLA leave for Plaintiff Middendorf's absence on October 8, 2007, on the grounds that the certification form was not submitted timely.  Plaintiff Middendorf requested an administrative review of his denial but the request remained denied.  He subsequently learned that the certification form that was submitted was incorrect since it addressed the entire absence rather than just October 8, 2007 and as a result the certification was never reviewed.

468.    As a result of this denial the Company placed Plaintiff Middendorf on Step One of the ACP.

469.     Plaintiff Pereira was FMLA approved for intermittent leave for her chronic serious health condition from December 7, 2006 to December 6, 2007 for three times per month, two days per episode.

470.     Plaintiff Pereira requested leave due to her chronic serious health condition from August 27 to August 29, 2007.  The Company approved her FMLA leave for August 27 and 28, 2007 under her existing certification for intermittent leave.  The Company advised Plaintiff Pereira that she would need to recertify her absence on August 29, 2007 because she exceeded the duration of her certification.  Prior to this absence Plaintiff Pereira exceeded the duration of her approved intermittent leave on one other occasion on June 18, 2007.

471.     In response to the Company's request, Plaintiff Pereira submitted a certification form.  On October 8, 2007, the Company denied FMLA on the grounds that the certification form was incomplete.

472.     Plaintiff Pereira submitted a revised certification form.  The Company sustained its denial of Plaintiff's FMLA leave request on October 23, 2007 since she did not include a specific request for an administrative review.

473.     The Company treated the absence of August 29, 2007 as chargeable under the ACP and placed Plaintiff Pereira on a short suspension step and suspended her for one day and three-quarters of an hour.

474.     Plaintiff Pereira had an approved certification for intermittent leave valid through December 6, 2007, and should not have been required to recertify her absence.

**The Company's regular denial of valid FMLA certification where disability approval has been granted for the same condition and absence is contrary to the Company's stated custom and constitutes unlawful interference with employees'**

**rights under the FMLA.  The Company has subjected Named Plaintiffs and members of the class to this violation of law.**

475.    Plaintiff Carballo suffered from several health conditions including pneumonia, Eustachian tube dysfunction, neck and chest pain and heart palpitations. These conditions, separately and in combination, qualified as serious health conditions covered under the FMLA insofar as Plaintiff Carballo was unable to work for more than three consecutive days, was hospitalized overnight and was under the care and continuing treatment of a health care provider.

476.    Plaintiff Carballo's serious health conditions prevented him from performing his regular job duties from March 12, 2007 through April 8, 2007.  Plaintiff had previously received FMLA coverage for his ongoing medical conditions, but his certification expired on April 1, 2007.

477.    On April 12, 2007, after being back at work for three days, Plaintiff Carballo relapsed, left work and was admitted to the hospital.  Plaintiff Carballo remained absent and unable to perform his work duties until April 25, 2007.

478.    Plaintiff Carballo's supervisor reported his relapse into the AMTS as a new occurrence rather than related to his previous absence.

479.    On April 5, 2007, Plaintiff Carballo's supervisor informed ARC that Plaintiff Carballo had exceeded the amount of FMLA time for which he had been approved. ARC issued Plaintiff Carballo a new certification form so that he could re-certify and obtain extended FMLA coverage for his continued absence.

480.    ARC sent Plaintiff Carballo a letter on April 13, 2007, informing him that he was approved for FMLA leave from April 2, 2007 through April 22, 2007.

481.     Plaintiff Carballo also received a letter from MetLife, dated April 12, 2007, advising him that his disability had been approved from March 12, 2007 through April 22, 2007.

482.     On April 26, 2007 Plaintiff Carballo submitted certification forms by mail and fax for his absences of April 2, 2007 through April 9, 2007 and from April 12, 2007 until April 25, 2007.

483.     Plaintiff Carballo received a letter dated April 30, 2007 which again approved him for FMLA leave from April 2, 2007 until April 22, 2007. On May 2, 2007, MetLife sent him an additional letter extending the approval of his disability to May 20, 2007.

484.     On May 8, 2007, ARC sent Plaintiff Carballo a letter advising him that his absence of April 12, 2007 until April 25, 2007, had been denied due to non-receipt of the certification form.  The entry of Plaintiff Carballo's relapse as "new" had triggered the Company's automated system to require the submission of a new certification form.

485.     Plaintiff Carballo requested a timely administrative review on May 16, 2007 of the FMLA leave denial.  ARC denied his administrative review on June 13, 2007 on the grounds that the original certification form was not submitted timely.

486.     The Company's failure to follow its stated custom of automatically granting FMLA leave for the same period and condition for which disability leave has been granted caused Plaintiff Carballo's absence to be counted against him under the ACP and he was placed on Step One for a period of 12 months.

487.     As previously alleged in Paragraphs  through , Plaintiff Henderson was out on approved disability leave from February 26, 2007 to March 13, 2007 due to a sprained ankle and gout; he returned to work on March 15 and relapsed on March 19.

488.     On April 2, 2007, MetLife approved the relapse of Plaintiff Henderson's disability leave for the period of March 19, 2007 until March 25, 2007.

489.     As previously alleged in Paragraph , the Company improperly denied FMLA leave for the relapse after Plaintiff Henderson's supervisor incorrectly reported the relapse absence as "new."

490.     Plaintiff Henderson's relapse absence would have been protected by FMLA leave if the Company had followed its stated custom of granting FMLA leave/coverage where disability is granted for the same condition and absence.  The denial of FMLA leave for the relapse made that absence chargeable under the ACP. The Company placed Plaintiff Henderson on Step Three with a five day suspension.

491.     Plaintiff Kaer requested FMLA leave and took a leave of absence for bilateral recurrent hernia surgery beginning on December 28, 2006.  Plaintiff Kaer's surgery occurred on January 3, 2007.  His condition qualified as a serious health condition under the FMLA insofar as it required the continuing care and treatment of an HCP and rendered the plaintiff unable to work for more than three days.

492.     The Company approved Plaintiff Kaer for FMLA leave from January 5, 2007 through January 21, 2007 in connection with his surgery.

493.     On January 21, 2007, Plaintiff Kaer had not fully recovered and was unable to return to work. He returned to work on February 4, 2007.

494.   On February 7, 2007, ARC gave Plaintiff Kaer until March 4, 2007 to submit a recertification form to obtain FMLA coverage for the days he was absent after January 21, 2007.  Mr. Kaer submitted paperwork to ARC to obtain FMLA leave for his extended absence from January 21 through February 4, 2007.

495.   Plaintiff Kaer also submitted paperwork to MetLife to obtain disability leave for his extended absence from January 21 through February 4, 2007.  On February 19, 2007, MetLife approved the extension of Plaintiff Kaer's disability leave, through February 4, 2007.

496.   On March 5, 2007, ARC denied Plaintiff Kaer FMLA leave for January 21, 2007 through February 4, 2007 on the grounds that ARC did not receive the recertification form. Despite the MetLife approval of disability leave, ARC did not automatically approve the same days for FMLA leave.

497.   The denial of FMLA leave for the January 21 through February 4, 2007 absence meant the absence was chargeable under the ACP.  The Company used that absence to place Plaintiff Kaer on Step Three for twelve months with a five day suspension.

498.   Plaintiff Spinale was absent from July 16, 2008 until August 20, 2008 due to his chronic depression.  This absence was subsequent and related to the absence previously alleged in Paragraph .

499.   Plaintiff Spinale submitted paperwork related to this subsequent absence to ARC and to MetLife.  This paperwork incorrectly indicated that the first day of the subsequent absence was July 18, 2008.  ARC did not process the certification because there was no corresponding July 18 absence in the AMTS system.

500.    On August 11, 2008, ARC denied Plaintiff Spinale FMLA leave for his July 16, 2008 to August 20, 2008 absence on the grounds that it did not receive an FMLA certification form for that absence. Plaintiff Spinale was given until August 25, 2008 to request administrative review.

501.    On August 22, 2008, MetLife approved Plaintiff Spinale for short term disability from July 18, 2008 through August 20, 2008. However, Plaintiff Spinale was still not granted FMLA leave.

502.    Plaintiff Spinale requested administrative review of the FMLA denial on August 22, 2008 and submitted a completed certification.  ARC upheld the denial  on the grounds that Plaintiff Spinale failed to file his FMLA certification for the July 16 to August 20 absence in a timely manner.

503.    Due to the Company's failure to follow its stated custom of granting FMLA leave where disability leave has been approved, Plaintiff Spinale's absence was counted as chargeable under the ACP.  The Company suspended Spindale on September 16, 2008 for 10 days pending termination and terminated him on September 26, 2008.

504.    The Company's policies, practices and procedures as set forth in this Count, as demonstrated in their application to Named Plaintiffs, willfully interfere with the rights of the Company's employees under the FMLA.  Each of these forms of interference violates the FMLA.


## COUNT III

### FMLA Retaliation
### (Extension of Retrogression Dates)

505.    Plaintiffs hereby incorporate the allegations contained in Paragraphs 1 through  of this Complaint as if they were fully set forth herein.

506.    The Company willfully retaliates against employees who have applied for and been granted FMLA leave coverage by the Company.

507.    The Company's method of retaliation increases the likelihood and frequency with which employees granted FMLA leave will be advanced through the steps of the ACP and disciplined, including progressing through the steps of the ACP, suspension and termination.

508.    Upon information and belief, the Company's employees refrain from attempting to exercise or exercising their FMLA rights as a result of their knowledge of the Company's retaliation against employees who use approved FMLA leave.

509.    The Company's retaliation in this manner violates the Family and Medical Leave Act, 29 U.S.C. §2615(a)(2) and 29 C.F.R. §825.330(c).

**The Company unlawfully retaliates against employees who have applied for and received FMLA leave coverage by extending an employee's retrogression date by the amount of employer-approved FMLA leave used by that employee.  The Company has unlawfully retaliated against Named Plaintiffs and members of the class in this manner.**

510.    Plaintiff Acierno was on Step Two of the ACP at the end of 2006 and was due to move back to Step One on January 23, 2007.

511.    Plaintiff Acierno was away from work on an approved FMLA leave from October 2, 2006 through January 1, 2007 to have surgery.

512.    Plaintiff Acierno's date to move back to Step One was extended to April 23, 2007 because of this FMLA approved absence.

513.   Beginning on February 22, 2007, Plaintiff Acierno took four vacation days on short notice in order to undergo an abdominal procedure relating to his ongoing illnesses and his recent previous surgeries.  The Company was aware of the reason for the absence.

514.   Plaintiff Acierno was unable to return to work after the procedure and had to call in sick on March 1, 2007.  He returned to work on March 4, 2007.

515.   Plaintiff Acierno's March 1 through 3 absence was incorrectly reported by his supervisor as a new absence unrelated to his ongoing condition.   As a result, ARC evaluated Plaintiff's leave request using the 1250 hours worked standard.

516.   Plaintiff Acierno's FMLA leave request for the March 1 absence was denied on the grounds Plaintiff Acierno did not meet the 1250 hours worked requirement.

517.   Accordingly, the March absence was counted against Plaintiff Acierno under the ACP.  The Company placed him on Step Three with a five-day suspension.  If the Company had not unlawfully extended Plaintiff Acierno's retrogression date, Plaintiff Acierno would not have advanced to Step Three with its accompanying five-day suspension.

518.   On April 4, 2006, Plaintiff Colclough was placed on Step Three.   He was to retrogress to Step Two on September 29, 2006.

519.   Plaintiff Colclough suffered from chronic asthma.  As a result of this condition, he was absent from April 19 through April 28, 2006 and from May 16 through July 11, 2006.   The Company approved Plaintiff Colclough's FMLA leave coverage request(s) for both absences.

520.    On October 4, 2006, Plaintiff Colclough fell as he was leaving work for the day.  As a result of the fall, plaintiff injured his hand and ankle rendering him unable to work on October 5 and 6, 2006.

521.    On October 9, 2007, Plaintiff Colclough suffered an on the job injury when he leaned back in his chair and it collapsed, causing him to fall.  Plaintiff Colclough left work early on October 9, 2006, and was unable to return to work until January 12, 2007. Plaintiff's absence was approved by MetLife for short term disability benefits.

522.     Plaintiff Colclough was told on January 12, 2007 that his date to retrogress off of Step Three had been pushed back from the original date of September 29, 2006 to December 6, 2006 due to his FMLA approved absences in April, May and June. Plaintiff Colclough was also told that his October 5, 2006 absence was denied FMLA protection due to insufficient hours worked.

523.    The denial made the October 5 absence chargeable under the ACP.  The Company used this absence to advance Plaintiff Colclough to Step Four of the ACP with a 20-day suspension.

524.    The Company also denied Plaintiff Colclough FMLA leave for his absence of October 9, 2006 through January 11, 2007.  That absence was, therefore, chargeable under the ACP.  Based upon that absence, the Company advanced Plaintiff Colclough to Step Five on February 21, 2007 and terminated his employment.

525.    The unlawful extension of  Plaintiff Colclough's retrogression date because of his FMLA approved absences positioned him for termination due to his October absences.

526.   On October 14, 2008, Plaintiff Epperson was placed on Step Two of the ACP and was informed that she would retrogress to Step One on March 20, 2009.

527.   Plaintiff Epperson was subsequently absent due to her own illness from December 16, 2008 to January 5, 2009. .  Plaintiff requested and was granted FMLA leave for this absence.

528.   As a result of this approved FMLA leave the Company extended Plaintiff Epperson's date of retrogression to April 9, 2009.

529.   Plaintiff Epperson was then absent from March 24, 2009 to March 30, 2009 due to tendonitis and sprain of her right arm.  She requested FMLA leave and submitted a certification form.  The certification form listed incorrect absence dates. FMLA was denied on the basis that she did not submit a timely certification form.

530.   Plaintiff Epperson's absence was considered chargeable by the Company as a result of her FMLA denial.  Due to the unlawful extension of her date of retrogression Plaintiff Epperson was advanced to Step Three with a five-day suspension.

531.   Plaintiff McGee was on Step Three of the ACP and was due to retrogress to Step Two on June 8, 2008.

532.   Plaintiff McGee was absent due to a chronic serious health condition from April 10, 2008 until June 17, 2008.  Plaintiff requested and was granted FMLA leave for this absence.

533.   The Company extended Plaintiff McGee's retrogression date by the length of time Plaintiff McGee was out on FMLA-covered leave.

534.    Plaintiff McGee was subsequently absent from July 3, 2008 until July 10, 2008 and was denied FMLA leave.  As a result of this denial of FMLA leave, Plaintiff McGee incurred a chargeable absence under the ACP.  The Company advanced Plaintiff McGee to Step Four with a ten-day suspension.

535.    If the Company had not unlawfully extended Plaintiff McGee's retrogression date due to his use of FMLA leave, Plaintiff McGee would only have been advanced to Step Three for his July absence and would not have been suspended.

536.    Plaintiff Monroe was placed on Step Two of the ACP and was targeted to retrogress to Step One on January 28, 2007.

537.    The Company extended Plaintiff Monroe's retrogression date to March 2, 2007 as a result of several approved FMLA leaves granted to Plaintiff Monroe.

538.    Plaintiff Monroe was absent from February 26, 2007 until February 27, 2007, due to her own illness.  She requested FMLA leave for this absence, but it was denied on the grounds that the submitted certification form did not establish a serious health condition.

539.    The extension of Plaintiff Monroe's retrogression date caused her to advance to Step Three with a three-day suspension since her February absence was chargeable under the ACP.

540.    Plaintiff Monroe was next absent from  March 13, 2007 until March 21, 2007, to care for her mother.  Plaintiff Monroe requested FMLA leave for this absence and submitted a medical certification form.  On April 9, 2007, the Company denied this FMLA leave request on the grounds of untimeliness.

541.     As a result of the denial of FMLA leave, Plaintiff Monroe incurred a chargeable absence under the ACP.  The Company used that absence to advance Plaintiff Monroe to Step Four on May 29, 2007 with a seven-day suspension.

542.     The Company terminated Plaintiff Monroe on October 31, 2007 after she had an  unrelated absence from  June 28, 2007 until October 30, 2007 and had exhausted her FMLA leave eligibility for the year.

543.     The Company's unlawful extension of Plaintiff Monroe's retrogression date positioned her to be placed on Step Four when The Company denied her FMLA leave coverage to take care of her mother and caused her to be subsequently terminated for the chargeable June 28 absence.

544.     On March 3, 2009, Plaintiff Parra was placed on Step One of the ACP and was due to retrogress off the plan on July 3, 2009.

545.     The Company extended Plaintiff Parra's date of retrogression to July 18, 2009 due to several FMLA approved absences.

546.     Plaintiff Parra was subsequently absent from July 13, 2009 to September 4, 2009 due to his ongoing chronic health condition for which he was approved FMLA leave.  Plaintiff Parra's absence became chargeable when he exhausted his FMLA leave entitlement for the year.

547.     As a result the Company advanced Plaintiff Parra to Step Three of the ACP and suspended him for five days due to his chargeable absence of greater than three days.  If the Company had not unlawfully extended Plaintiff Parra's retrogression date, Plaintiff Parra would have come off the attendance plan on July 3, 2009 and would not have advanced to a suspension step.

548.    Plaintiff Vega was on Step Three and due to retrogress to Step Two on July 22, 2008.

549.    Plaintiff Vega suffers from chronic asthma and the Company granted Plaintiff Vega approved FMLA leave from April 15, 2008 through April 15, 2009 for three absences per month, three days per episode.

550.    Due to her health condition, Plaintiff Vega was absent from July 31, 2008 through August 4, 2008.  Her supervisor advised her when she returned to work that she needed to submit a new certification form because she had exceeded the time allowed under her existing certification.

551.    Ultimately, the Company granted FMLA protection for the July 31 and August 1, 2008 absences.  FMLA leave was denied for August 4, 2008.

552.    Plaintiff Vega was advised on September 19, 2008 that her retrogression date had been extended to August 5, 2008.

553.    The denial of FMLA leave for August 4, 2008 made that absence chargeable under the ACP.  The Company's unlawful extension of Plaintiff Vega's retrogression date to August  5, 2008 resulted in her being advanced to Step Four with a ten-day suspension.

## COUNT IV

### FMLA Retaliation
### (Revision of Absence Control Plan)

554.    Plaintiffs hereby incorporate the allegations contained in Paragraphs 1 through  of this Complaint as if they were fully set forth herein.

555.   On November 5, 2006, Defendant Verizon New York put a revised version of the ACP into effect in response to employees' use of FMLA leave time.  The revised ACP was subsequently put into effect by other Defendants. .

556.   The Company revised its ACP in response to employees' use of FMLA leave.

557.    The revised ACP increases the level of sanction for chargeable absences.  The result was that employees who apply for FMLA coverage and are denied that leave are sanctioned, suspended or terminated more quickly than was possible before the revisions.

558.   In the case of Named Plaintiffs and class members who were entitled to FMLA coverage, but were unlawfully denied it due to the Company's policies procedures and practices set forth herein, these employees are doubly penalized under the ACP.

559.   The Company's revision of its ACP was done in retaliation for employees' exercise of their rights under the Family and Medical Leave Act.  The revision of the ACP violated the Family and Medical Leave Act, 29 U.S.C. §2615(a)(2) and 29 C.F.R. §825.220(c).

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request:

A.   That the Court issue an order certifying, under Rules 23(b)(1) and (2) of the Federal Rules of Civil Procedure, a class consisting of current and former employees of the Company with whose FMLA rights the Company has interfered and

against whom the Company has retaliated for exercising or attempting to exercise

FMLA rights in the three years prior to filing the Complaint.

B.      That the Court enter declaratory judgment pursuant to 28 U.S.C. §2201 in

favor of the Named Plaintiffs and the class and against the Company that the

Company's FMLA policies, practices and procedures as alleged in this Complaint are in

violation of the FMLA.

C.      That the Court issue an order preliminarily and permanently enjoining the

Company and its employees, officers, agents, representatives, successor and assigns

from engaging in, allowing, permitting, approving, authorizing, acquiescing in or ratifying

policies, practices and procedures with respect to the Named Plaintiffs and the class

that are in violation of the FMLA as alleged in this Complaint.

D.      To the extent that the Court finds that the Company and its employees,

officers, agents, representatives, successors and assigns have changed or modified

any of the policies, procedures and practices challenged in this Complaint on a going

forward basis, that the Court issue an order directing the Company to establish a

system to determine the harm caused to the plaintiffs and class members by those prior

policies, procedures and practices and to provide relief to those harmed, as provided

below in paragraph F.

E.      That the Court issue an order directing the Company to institute and carry

out policies, procedures and practices that comply with the FMLA and which eradicate

the effects of  the Company's unlawful policies, procedures and practices.

F.      With respect to the Named Plaintiffs and members of the class, that the

Court direct to the Company to provide the following relief:

1.     Remove and expunge from their  individual employment records any adverse action(s) taken against the individual Named Plaintiffs and class members under the ACP as a result of the denial of FMLA leave including placing them on steps, refusing to retrogress them to lower steps, suspending them and/or terminating their employment;

2.     Paying any and all lost wages, salary, benefits or other compensation denied to or lost by individual Named Plaintiffs and class members as a result from the Company's unlawful interference and/or retaliation;

3.     Paying an additional amount to Named Plaintiffs and class members as liquidated damages by reason of the Company's willful violations of the FMLA in amounts to be proven at trial; and

4.     Reinstating Plaintiffs and class members to their previous positions with the Company and paying her wages, salary, benefits and other compensation denied or lost to each of them due to the Company's willful violation of the FMLA, in an amount to be proven at trial.

G.     That the Court issue an order directing the Company to pay the costs of this litigation, including reasonable attorneys' fees, expert witness fees, costs and other expenses.

H.     Granting any and all other relief the Court deems appropriate and just under the circumstances.

JURY DEMAND

A jury trial is demanded for all causes of action.

Daniel E. Clifton, Esq. (DC0632)
Lewis, Clifton & Nikolaidis, PC
350 Seventh Ave., 18th Floor
New York, NY 1001
(212) 419-1500 (phone)
(212) 419-1510 (fax)
dclifton@lcnlaw.com


__/S/ Gabrielle Semel_____
Gabrielle Semel (GS 0048)
350 Seventh Avenue, 18th Floor
New York, New York 10001
(212) 419-1550 (phone)
(212) 419-1555 (fax)
gsemel@cwa-union.org


___/S/ Christina Norum_____
Christina Norum (CN 8152)
350 Seventh Avenue, 18th Floor
New York, New York 10001
(212) 419-1550 (phone)
(212) 419-1555 (fax)
cnorum@cwa-union.org


__/S/ Mary K. O'Melveny_____
Mary K. O'Melveny (MK00M 4050)
501 Third Street, NW, Eighth Floor
Washington, DC 20001
(202) 434-1234 (phone)
(202) 434-1219 (fax)
maryo@cwa-union.org


__/S/ Louie Nikolaidis_____
Louie Nikolaidis, Esq. (LN5979)
Lewis, Clifton & Nikolaidis, PC
350 Seventh Ave., 18th Floor
New York, NY 1001
(212) 419-1500 (phone)
(212) 419-1510 (fax)
lnikolaidis@lcnlaw.com